**In re LOU LEVY & SONS FASHIONS, INC., Litigation.**

**LOU LEVY & SONS FASHIONS, INC., Mod–Maid Imports, Inc., Donnybrook Fashions, Ltd. and Karizma and Braefair, Divisions of Braetan, Inc., Plaintiffs,**

**v.**

**Michelina J. ROMANO, Lawrence Meltzer and First Fidelity Bank, N.A. New Jersey, Defendants.**

**No. 90 Civ. 0238 (TPG).**
**MDL No. 856.**

United States District Court,
S.D. New York.

March 5, 1992.

Donald L. Kreindler, Kreindler & Relkin, New York City, for plaintiffs.

William D. Wallach, McCarter & English, New York City, for defendants.

## OPINION

GRIESA, District Judge.

On November 15, 1991 the court granted summary judgment in favor of plaintiffs on their conversion claim against defendant First Fidelity Bank. First Fidelity has moved for reconsideration. Plaintiffs have moved for sanctions against First Fidelity for making this motion.

First Fidelity has shown good grounds for asking the court to reconsider the summary judgment ruling. There are certain issues which need to be explored more fully than was done in the November 15, 1991 opinion. However, after reconsideration the court is of the view that plaintiffs are entitled to summary judgment on their conversion claim against First Fidelity.

Plaintiffs' motion for sanctions is denied.

## ISSUES PRESENTED

It is undisputed that two employees of plaintiffs engaged in a 5½ year scheme to place unauthorized endorsements on a large number of checks payable to the Levy corporations and that First Fidelity accepted these checks for deposit into the personal accounts of one of these employees. This gives rise to the conversion claim by plaintiffs against First Fidelity.

First Fidelity has asserted as a defense under U.C.C. § 3–404(1) that plaintiffs' conduct amounted to ratification of the unauthorized endorsements. The bank has also asserted the defenses of estoppel, laches, and negligence, contending that these three defenses are allowed under § 3–404(1) and that the defense of negligence is also allowed under U.C.C. § 3–406.

In response, plaintiffs contend that there is no factual basis for at least some of these defenses. Citing U.C.C. § 3–406, plaintiffs also contend that the defenses are barred because First Fidelity acted in a commercially unreasonable manner.

## FACTS

For the sake of completeness, the facts set forth in the November 15, 1991 opinion are repeated here, together with certain additional facts taken from the submissions presented on an earlier summary judgment motion against the individual defendants, Michelina J. Romano and Lawrence Meltzer. The parties have consented to have the court refer to the record on the earlier motion.

Plaintiffs Lou Levy and Sons Fashions, Inc., Mod–Maid Imports, Inc., Donnybrook Fashions, Ltd. and Braetan, Inc. are affiliated New York corporations engaged in the business of manufacturing and selling women's clothing.

Defendant First Fidelity Bank, N.A. New Jersey, is a national banking association organized under the laws of the United States and located in the state of New Jersey.

Plaintiffs commenced suit in this district on January 16, 1990 against First Fidelity and the individual perpetrators of the scheme, Romano and Meltzer. In its answer, First Fidelity raised the affirmative defense of lack of personal jurisdiction. Plaintiffs then filed an action in the federal court in New Jersey. By order dated August 14, 1990, the Judicial Panel on Multidistrict Litigation transferred the New Jersey action to this court. There is no claim that this court lacks jurisdiction to decide the present motion.

The following facts are undisputed. Michelina Romano, the accounts receivable bookkeeper for the Levy corporations, and Lawrence Meltzer, the sales manager, forged the Levy companies' corporate endorsements on 193 checks over a 5½ year period between late 1984 and January 1990. Meltzer or Romano endorsed 188 of these checks by writing or typing the name of the particular corporate payee and the account number of one of Meltzer's personal

accounts. Five of the checks were endorsed with the name of Meltzer or his wife without any corporate name. Meltzer deposited the checks in his personal checking and savings accounts at First Fidelity. Plaintiffs' exhibits include copies of the deposited checks, the deposit slips for the checks, and the bank statements for the personal bank accounts into which the checks were deposited.

With regard to Meltzer's dealings with First Fidelity, plaintiffs have submitted written statements from six of First Fidelity's tellers who accepted the checks for deposit into Meltzer's accounts. In these statements, taken on January 19, 1990, the tellers were asked why a check payable to a business was allowed to be deposited to a personal account. The tellers responded that they had neglected to ascertain to whom the checks were payable.

The deposition of Charlotte Nauerz, assistant manager of the Marlboro, New Jersey branch of First Fidelity was taken. This deposition establishes that on one occasion First Fidelity attempted to prevent Meltzer from depositing a corporate check into his personal account. This occurred on November 25, 1989, when a teller at the Marlboro branch refused to accept a deposit from Meltzer and told Nauerz that Meltzer was getting excited about her refusal to accept the deposit. Nauerz told Meltzer that First Fidelity did not accept deposits of business checks into personal accounts. However, a memorandum written by Nauerz stated that after checking Meltzer's deposit slips she discovered that Meltzer had gone to another First Fidelity branch and made the deposit she had not allowed him to make. Over the 5½ years during which Meltzer deposited corporate checks into his personal accounts this is the only time a First Fidelity employee challenged his authority to do so, and even then Meltzer ultimately succeeded in making the improper deposit.

As to the workings of the scheme within the Levy companies, the submissions on the earlier summary judgment motion show that Romano was responsible for properly recording payments received from customers and for depositing checks into plaintiffs' bank accounts. The proper handling of such a check would have involved recording it as a payment by debiting (increasing) the cash account and crediting (reducing) the accounts receivable account. Romano was, of course, also responsible for depositing the check in the proper corporate bank account. Romano devised a method of concealing the diversion of these checks. She would make proper credit entries to the accounts receivable accounts. Then, instead of making a debit entry to the cash account (the falsity of which would have been difficult to conceal) Romano would make debit entries in accounts involving such things as credits for defective goods returned by the customers. By these devices Romano made it appear as if plaintiffs' books were in order and properly balanced. Romano succeeded in concealing this scheme from her employees for some 5½ years.

First Fidelity asserts that plaintiffs were negligent in not uncovering the fraud much earlier than was done. First Fidelity relies on financial records of plaintiffs which show that credits for customer returns and allowances increased each year to a degree which First Fidelity says should have alerted plaintiffs to the problem. There was a 72% increase in 1987, a 93% increase in 1988 and a 75% increase in 1989.

## DISCUSSION

The court must apply the law of New Jersey, which has adopted the Uniform Commercial Code. The Code is contained in Title 12A, Subtitle 1 of the New Jersey Statutes Annotated.

An instrument is converted when it is paid on an unauthorized endorsement. N.J.Stat.Ann. § 12A:3–419(1)(c). First Fidelity concedes that it converted the checks but contends that plaintiffs are precluded from recovering because of the affirmative defenses described earlier in this opinion.

There are two provisions in the U.C.C. which are relevant, §§ 3–404(1) and 3–406. Section 3–404(1) provides:

(1) Any unauthorized signature is wholly inoperative as that of the person

whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

N.J.Stat.Ann. § 12A:3–404(1). Section 3–406 provides

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

N.J.Stat.Ann. § 12A:3–406.

■ Where an action is brought by the payee of a check against a bank which has paid on the basis of an unauthorized signature, § 3–404(1) allows the bank to defend against the claim if the payee has ratified the unauthorized signature "or is precluded from denying it." The defense of ratification is expressly referred to in § 3–404(1), and the parties here agree that the defenses of estoppel, laches and negligence may be posed under the general wording, "is precluded from denying it."

■ Section 3–406 deals expressly with negligence. It also deals with the concept of commercial reasonableness. Thus, § 3–406 provides in pertinent part that where a person's negligence "substantially contributes" to the use of the unauthorized signature, that person is precluded from claiming against someone who pays the instrument "in good faith and in accordance with the reasonable commercial standards of the ... payor's business."

In the November 15, 1991 opinion the court made the following ruling on the question of commercial reasonableness.

Under U.C.C. § 3–406, the party claiming it accepted checks in a commercially reasonable manner has the burden of proving that it did so. *D & G Equipment Co., Inc. v. First Nat'l Bank*, 764 F.2d 950, 956 (3d Cir.1985). First Fideli-

ty has failed to meet that burden. Plaintiffs' evidence demonstrates that over the course of five years First Fidelity accepted 193 business checks with forged endorsements for deposit into Meltzer's personal accounts. First Fidelity failed to inquire into Meltzer's authority to endorse the checks. The Nauerz deposition establishes only one occasion when one First Fidelity branch questioned Meltzer and told him he could not deposit a check. Even on that one occasion, however, Meltzer simply went to another First Fidelity branch and deposited the check there. First Fidelity's failure to determine Meltzer's authority when he presented checks payable to a corporate payee for deposit into his personal account was commercially unreasonable as a matter of law. The *D & G Equipment* case is directly on point.

In the absence of exceptional circumstances, the failure of a bank to inquire when an individual presents a check made payable to a corporate payee for deposit to his personal account is deemed an unreasonable commercial banking practice as a matter of law.

764 F.2d at 956.

It is now necessary to deal with the various contentions of the parties regarding the defenses of ratification, estoppel, laches and negligence.

A hearing was held on January 14, 1992, at which the attorneys assisted the court greatly in clarifying the issues. First Fidelity conceded that, regardless of what legal theory it is asserting by way of affirmative defenses, these defenses are grounded in the factual contention that plaintiffs were negligent in failing to discover and prevent the fraudulent scheme. First Fidelity does not contend that there was any knowing or intentional conduct on the part of plaintiffs giving rise to any of the affirmative defenses. Thus, First Fidelity asserts negligence as a defense, and it also asserts that the negligent failure on the part of plaintiffs to stop the scheme or take legal action amounted to estoppel and laches.

At the January 14 hearing First Fidelity basically dropped the ratification defense, conceding that ratification cannot be based upon negligence. First Fidelity stated that it is not pressing the ratification defense on the motion for reconsideration.

This leaves for disposition the defenses of estoppel, laches and negligence. As to these, it is clear that there is a triable issue of fact as to whether plaintiffs were negligent in their failure to prevent the fraud or take legal action at an earlier point. However, plaintiffs assert that these defenses are barred because First Fidelity acted in a commercially unreasonable manner.

U.C.C. § 3–404(1) contains no provision expressly authorizing plaintiffs to set up commercial unreasonableness as a bar to the defenses of estoppel, laches and negligence. However, § 3–404(1) must be read in conjunction with § 3–406. The latter section deals with a claim made by a person whose "negligence substantially contributes ... to the making of an unauthorized signature." Such a person may be precluded from asserting the lack of authority against a payor, but only where the payor acts in good faith and in accordance with "reasonable commercial standards."

■ Section 3–406 should be read as applying not only to situations where an affirmative defense denominated "negligence" is asserted, but to any circumstance where, in the language of the statute, a person's "negligence substantially contributes ... to the making of an unauthorized signature." It is the view of the court that where there is a factual contention of negligence, commercial unreasonableness is a bar to a defense based on such negligence whether the defendant uses the legal theory "negligence" or uses some other theory based on the alleged negligent conduct, such as estoppel or laches. A negligence-based defense asserted under § 3–404(1) is barred by § 3–406 if the proponent of the defense has acted in a commercially unreasonable manner. *See Am. Mach. Tool Distrib. Assoc. v. Nat'l Permanent Fed. Savings and Loan Assoc.*, 464 A.2d 907 (D.C. 1983); *Trust Co. of Ga. Bank of Savan-nah v. Port Terminal and Warehousing Co.*, 153 Ga.App. 735, 266 S.E.2d 254 (1980).

■ In the motion for reconsideration First Fidelity has cited *Stella v. Dean Witter Reynolds, Inc.*, 241 N.J.Super. 55, 574 A.2d 468 (1990). However, *Stella* is of no real assistance to First Fidelity. That case held that the defense of ratification under § 3–404(1) is available even where the party posing that defense acts in a commercially unreasonable manner. But ratification involves knowing and intentional conduct, not mere negligence. In the present case, it is now clear that the defense of ratification has no factual basis, and the defense has been withdrawn. *Stella* does not deal with negligence or negligence-based defenses.

The result is that First Fidelity's commercial unreasonableness bars the defenses of estoppel, laches and negligence.

At the January 14 hearing First Fidelity argued for the first time that the type of negligence it is asserting does not come within the language of § 3–406 dealing with negligence which "substantially contributes ... to the making of an unauthorized signature." First Fidelity argued that § 3–406 applies to situations such as the mishandling of a check-signing device or a check-endorsing device, but does not apply to negligent failure to detect a scheme over a period of 5½ years.

The court believes this argument to be without merit. If the management of the plaintiff companies was negligent in failing to detect the scheme, certainly this failure *substantially contributed* to the ability of the thieves to perform their thievery—*i.e.*, their ability to proceed with the *making of the unauthorized signatures.*

### CONCLUSION

Upon reconsideration, the court affirms that plaintiffs' motion for summary judgment on their conversion claim against First Fidelity should be granted.

SO ORDERED.