**In re LOU LEVY & SONS FASHIONS, INC., Litigation.**

**LOU LEVY & SONS FASHIONS, INC.; Mod–Maid Imports, Inc.; Donnybrook Fashions, Ltd.; Karizma & Braefair, divisions of Braetan, Inc., Plaintiffs–Appellees–Cross–Appellants,**

v.

**Michelina J. ROMANO, and Lawrence Meltzer, Defendants,**

**First Fidelity Bank, N.A. New Jersey, Defendant–Appellant–Cross–Appellee.**

Nos. 660, 794, Dockets 92–7802, 92–7862.

United States Court of Appeals, Second Circuit.

Argued Dec. 29, 1992.

Decided March 5, 1993.

William D. Wallach, Newark, NJ (Joseph Lubertazzi, Jr., McCarter & English, of counsel), for defendant-appellant-cross-appellee.

Donald L. Kreindler, New York City (S. Robert Schrager, David P. Lennon, Kreindler & Relkin, P.C., of counsel), for plaintiffs-appellees-cross-appellants.

Before: OAKES, MINER and McLAUGHLIN, Circuit Judges.

OAKES, Circuit Judge:

This appeal involves a bank's liability under the Uniform Commercial Code for accepting for deposit into a defalcating employee's personal accounts checks bearing forged endorsements drawn payable to the employer corporation. First Fidelity Bank, N.A. New Jersey ("Fidelity") appeals from

a judgment of the district court for the Southern District of New York, Thomas P. Griesa, *Judge,* granting Lou Levy & Sons Fashions, Inc., Mod–Maid Imports, Inc., Donnybrook Fashions, Ltd., and Braeten, Inc. ("Levy") summary judgment on a conversion claim and granting Levy, the employer, prejudgment interest from the date the claim was filed. The district court determined as a matter of law that Fidelity was barred from asserting any defenses based on Levy's own allegedly negligent conduct (failure to discover the defalcations) because Fidelity had acted in a commercially unreasonable manner. *In re Lou Levy & Sons Fashions, Inc., Litig.,* 785 F.Supp. 1163 (S.D.N.Y.1992). For the reasons set forth below, we affirm.

## BACKGROUND

The following facts are taken from the district court opinion and are undisputed. Levy's accounts receivable bookkeeper, Michelina Romano, and Levy's sales manager, Lawrence Meltzer, forged Levy's corporate endorsement on 193 checks worth over $2 million during a five and one-half year period between late 1984 and January 1990. Meltzer or Romano endorsed 188 of these checks by writing or typing the name of the particular corporate payee and the account number of one of Meltzer's personal accounts. The remaining five checks were endorsed with Meltzer's or his wife's name without any corporate name. Meltzer deposited all of the checks in his personal checking and savings accounts at Fidelity. Over the five and one-half years during which Meltzer deposited corporate checks into his personal accounts, only once did a Fidelity teller challenge his authority to make deposits and even then Meltzer ultimately succeeded in making the improper deposit by going to another teller at a different branch of the bank.

■ Levy, an affiliation of New York corporations engaged in the business of manufacturing and selling women's clothing, brought suit in diversity against Romano, Meltzer, and Fidelity in the district court for the Southern District of New York on January 16, 1990. In response to a personal jurisdiction defense raised by Fidelity, Levy also brought suit in the District of New Jersey. The Judicial Panel on Multidistrict Litigation subsequently transferred the New Jersey suit to the Southern District of New York. In multidistrict litigation transfers, the law of the transferor district must be applied. *Stirling v. Chemical Bank,* 382 F.Supp. 1146, 1150 n. 5 (S.D.N.Y.1974). Therefore, the district court followed New Jersey law in this case. New Jersey has adopted the Uniform Commercial Code (the "U.C.C."), found in Title 12A, Subtitle 1 of the New Jersey Statutes Annotated.

On October 1, 1990, the district court granted Levy's motion for summary judgment against Romano and Meltzer for conversion. *In re Lou Levy & Sons Fashions, Inc., Litig.,* No. 90 Civ. 0238, 1990 WL 151136, 1990 U.S.Dist.LEXIS 12881 (S.D.N.Y. Oct. 1, 1990). Thereafter, Levy moved for summary judgment against Fidelity for conversion pursuant to N.J.Stat. Ann. § 12A:3–419(1)(c) (West 1992).[1] Levy's motion was granted. *In re Lou Levy & Sons Fashions, Inc., Litig.,* No. 90 Civ. 0238, 1991 WL 254428, 1991 U.S.Dist.LEXIS 16576 (S.D.N.Y. Nov. 15, 1991). Following a motion for reconsideration, the district court reaffirmed its prior ruling, holding that Fidelity's commercially unreasonable conduct in accepting for deposit into personal accounts 193 checks drawn to the order of Levy estopped Fidelity from asserting the defense of contributory negligence or any other defense based on Levy's alleged negligence. On April 30, 1992, the district court issued a memorandum decision awarding Levy prejudgment interest against Fidelity from the commencement of the action, following New Jersey court rule 4:42–11(b), rather than from the dates of the accrual of the claim for relief, as required by N.J.Stat.Ann. § 12A:3–122(4)(b) (West 1992). *In re Lou Levy & Sons Fashions, Inc., Litig.,* No. 90 Civ. 0238, 1992 WL 111094, 1992

---

1. Under New Jersey law, "[a]n instrument is converted when ... it is paid on a forged indorsement." N.J.Stat.Ann. § 12A:3–419(1)(c) (West 1992).

U.S.Dist.LEXIS 6271 (S.D.N.Y. Apr. 30, 1992).

On appeal, Fidelity argues that the district court erred in not accepting its affirmative defense that Levy was contributorily negligent in not discovering Romano and Meltzer's fraud. Although Fidelity concedes that accepting checks payable to a corporate payee for deposit into a personal account is commercially unreasonable as a matter of law, Fidelity maintains that its behavior does not bar it from raising a defense of contributory negligence or equitable estoppel. Levy cross-appeals on the question of prejudgment interest, arguing that it should receive interest on the judgment from the date each check was converted.

We find neither Fidelity's appeal nor Levy's cross-appeal persuasive.

### DISCUSSION

■ Resolution of Fidelity's appeal depends on the interpretation of two provisions of New Jersey law adopted from the U.C.C., N.J.Stat.Ann. §§ 12A:3–404(1) (West 1992) ("§ 3–404(1)") and 12A:3–406 (West 1992) ("§ 3–406"). Section 3–404(1), which covers the liability of parties in situations involving unauthorized signatures, provide

> Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.

Section 3–406 creates a defense in situations where a claimant's negligence substantially contributes to a forgery or alteration. Of particular concern to this case, § 3–406 allows a bank to assert a claimant's negligence as a defense only if the

bank can demonstrate that its conduct met reasonable commercial standards. Section 3–406 provides:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

Fidelity argues that Levy negligently failed to discover Romano and Meltzer's conversion scheme and, according to § 3–404(1), is thereby "precluded from denying" Meltzer's authority to deposit the 193 checks.[2] Fidelity challenges the district court's opinion on the grounds that the district court erred by applying the § 3–406 commercial reasonableness test to § 3–404(1) even though "§ 3–404(1) contains no provision expressly authorizing plaintiffs to set up commercial unreasonableness as a bar to the defenses of estoppel, laches, and negligence." *In re Lou Levy & Sons, Fashions, Inc., Litig.,* 785 F.Supp. at 1167. In short, Fidelity argues that § 3–404(1) should be read independently of § 3–406, and, therefore, the commercial reasonableness test found in § 3–406 should not prevent it from avoiding liability.

■ The district court was correct in reading § 3–404(1) and § 3–406 together and in concluding that the § 3–406 commercial reasonableness test applied to § 3–404(1). Individual sections of the U.C.C. should be interpreted as part of an entire statutory scheme, not as isolated statutes each standing on its own, as Fidelity insists. The interdependence of each section of the U.C.C. is made clear in the official Comments to the U.C.C.[3] The Comments

---

**2.** On appeal, both Fidelity and Levy argue the issue whether Levy was negligent in not discovering Romano and Meltzer's conversion scheme during the five and one-half years of its existence. The district court did not make a finding on this issue and we do not think that it need be resolved.

**3.** According to the acknowledgement notes included at the beginning of Title 12A of the New Jersey Statutes, "the official Comments are indispensable to an understanding of the objectives and purposes of the Uniform Commercial Code and the substantive changes effected in the

state that "[t]he text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole...." N.J.Stat.Ann. § 12A:1–102 (West 1992) (U.C.C. Comments). The U.C.C. was adopted by New Jersey in its entirety and made to take effect on January 1, 1963. *See* N.J.Stat.Ann. § 12A:10–106 (West 1992). The purpose in adopting the U.C.C. was "to simplify, clarify and modernize the law governing commercial transactions" and "to make uniform the law among the various jurisdictions." N.J.Stat.Ann. § 12A:1–102(2)(a), (c) (West 1992).

■ The general principle guiding the U.C.C.'s allocation of losses from forged endorsements on checks is to place the loss on the party in the best position to avoid the loss. *See* Donald J. Rapson, *Loss Allocation in Forgery and Fraud Cases: Significant Changes Under Revised Articles 3 and 4*, 42 Ala.L.Rev. 435, 435 (1991); George G. Triantis, *Allocation of Losses from Forged Indorsements on Checks and the Application of § 3–405 of the Uniform Commercial Code*, 39 Okla.L.Rev. 669, 669 (1986). As a result, the U.C.C. typically places the burden of loss on the person who dealt with and took the instrument in question from the forger as "such person is presumed to have been in the best position to thwart the attempted fraud and thereby prevent the loss." Triantis, *supra*, at 670. More specifically, and relevant to this appeal, the "depositary bank is assumed to have been in the best position to prevent the fraud by taking steps before cashing the check to verify the genuineness of the indorsement and to ascertain the identity of the wrongdoer presenting the check for payment." *Id.* at 671–72 (footnote omitted).

■ The U.C.C., however, supplements the general principle of allocating losses to the party who accepts a forged check with certain defenses that take into account the culpability of the parties. Section 3–404(1) provides for two categories of defenses: ratification and estoppel against the person whose name is signed. Fidelity's claim is limited to this second category and relies exclusively on allegations that Levy was negligent in allowing the conversion scheme to go unhindered for so long.[4]

Although § 3–404(1) does not reiterate the commercial reasonableness provision found in § 3–406, as we commenced by saying, the official Comments to the U.C.C., which are also included in the New Jersey statute, indicate that § 3–404(1) is to be read in conjunction with § 3–406. Comment 4 to § 3–404 states that the "words 'or is precluded from denying it' are retained in subsection (1) to recognize the possibility of an estoppel against the person whose name is signed ... and to recognize the negligence which precludes a denial of the signature." N.J.Stat.Ann. § 12A:3–404 (West 1992) (U.C.C. Comments). The Comment section lists § 3–406 as the cross reference for this Comment.

Moreover, it is difficult to understand what purpose would be served by treating negligence differently under § 3–404 than it is under § 3–406. Fidelity suggests that § 3–406 applies to negligence which contributes to the making of an unauthorized signature whereas § 3–404(1) addresses situations where negligence allows the improper conduct to continue. However, Fi-

---

law." N.J.Stat.Ann. § 12A:1 (West 1992) (historical notes).

Karl Llewellyn, one of the progenitors of and the Chief Reporter for the U.C.C., stated that the U.C.C. Comments "are very useful in presenting something of the background and purposes of the sections, and of the way in which the details and policies *build into a whole*.... They provide also *a painstaking set of cross-references to other relevant material in the Code*." Karl N. Llewellyn, *Why We Need the Uniform Commercial Code*, 10 U.Fla.L.Rev. 367, 375 (1957) (emphasis added).

**4.** On appeal, Fidelity attempts to characterize its claim for the first time as being based on principles of "equitable estoppel." However, Fidelity's affirmative defense is based entirely on allegations that Levy was negligent in not discovering and preventing Romano and Meltzer's conversion scheme. Therefore, we do not think that the label of "equitable estoppel" used by Fidelity changes the analysis or outcome of this opinion.

delity provides no basis in the text, purpose, logic, commentary, or case law of the U.C.C. for this proposition.

In fact, the case law on this issue uniformly supports the application of the commercial reasonableness test to § 3–404.[5] In *Trust Co. of Georgia Bank of Savannah, N.A. v. Port Terminal & Warehousing Co.*, 153 Ga.App. 735, 266 S.E.2d 254 (Ga.Ct.App.1980), the Georgia Court of Appeals found that § 3–404(1) "does *not* establish a separate and distinct estoppel by negligence defense for a payor who pays an instrument over a forged endorsement." *Id.* 266 S.E.2d at 257. Likewise, in *American Mach. Tool Distrib. Ass'n v. National Permanent Fed. Sav. & Loan Ass'n*, 464 A.2d 907 (D.C.1983), the District of Columbia Court of Appeals looked first at official Comment 4 of § 3–404 and then determined that § 3–406 "complements § 3–404(1) and defines the circumstances in which one may be precluded from denying the authority of the one making an unauthorized signature." *Id.* at 911. The District of Columbia Court of Appeals reiterated this conclusion five years later in *American Sec. Bank, N.A. v. American Motorists Ins. Co.*, 538 A.2d 736, 738 (D.C.1988).[6]

Fidelity offers one additional argument for interpreting § 3–404 without the § 3–406 commercial reasonableness test. Like § 3–404, N.J.Stat.Ann. § 12A:3–405 (West 1992)[7] ("§ 3–405") contains no provision

expressly authorizing plaintiffs to set up commercial unreasonableness as a bar to the defenses of estoppel, and the majority of jurisdictions have not read the commercial reasonableness test into § 3–405. *See, e.g., Shearson Lehman Bros., Inc. v. Wasatch Bank*, 788 F.Supp. 1184, 1193–94 (D.Utah 1992). Fidelity argues by analogy that § 3–404 should also be understood as not containing the commercial reasonableness test.

The interpretive treatment of § 3–405 is not properly extended to § 3–404. Unlike § 3–404, § 3–405 does not make specific reference to negligence and § 3–406 within the official Comments. Section 3–405 establishes a definite and predictable rule covering a carefully circumscribed set of cases, where the drawer issues a check to an imposter or fictitious payee. In these cases, it is presumed that the drawer is in the best position to discover and prevent fraud. *See* Brian P. McCarthy, Note, *Section 3–405 of the Uniform Commercial Code: Time for a Negligence Standard?*, 37 Ala.L.Rev. 199 (1985). The New Jersey Study Comments to § 3–405 support the view that § 3–405 cases are treated differently from other forgeries intentionally. As Comment 1 states, "[i]t should be noted that one case, frequently thought of as a forgery situation under the N.I.L., is specially handled by the Code section 3–405 in a way that removes it from the conversion

---

**5.** Since one of the major goals of the U.C.C. is uniformity, interpretations of the U.C.C. by the courts of other states serve as "more than mere persuasive authority." *A.J. Armstrong Co. v. Janburt Embroidery Corp.*, 97 N.J.Super. 246, 234 A.2d 737, 744 (1967).

**6.** An identical result has been reached by several other jurisdictions that confronted this issue. *See Mohr v. State Bank of Stanley*, 241 Kan. 42, 734 P.2d 1071, 1078 (1987) (defense based on negligence of corporate payee is governed by § 3–406); *Five Towns College v. Citibank, N.A.*, 108 A.D.2d 420, 430, 489 N.Y.S.2d 338, 345 (2d Dept'.1985) (rule in § 3–404 read in context of § 3–406); *Thompson Maple Prods., Inc. v. Citizens Nat'l Bank*, 211 Pa.Super. 42, 234 A.2d 32, 33–34 (1967) (section 3–406 determines loss allocation where the plaintiff-drawer was negligent); *see also* John W. Hinchey, *An Analysis of Bank Defenses to Check Forgery and Alteration Claims Under Uniform Commercial Code Articles 3 and 4: Claimants' Negligence and Failure to Give Notice*, 10 Pepp.L.Rev. 1, 8–11 (1982)

(bank that allows a forger to deposit a corporate item to his personal account presented as an example of a failure to act according to reasonable commercial standards that bars an assertion of claimant's negligence as a defense).

**7.** N.J.Stat.Ann. § 12A:3–405 provides in pertinent part:

(1) An indorsement by any person in the name of a named payee is effective if

(a) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

rule of section 3–419...." N.J.Stat.Ann. § 12A:3–405 (West 1992) (N.J. Study Comment 1). Thus, § 3–404 includes the commercial reasonableness test, whereas § 3–405 does not.[8]

 Both Levy and Fidelity object to the district court's determination of damages. Levy contends that the district court should have applied N.J.Stat.Ann. § 12A:3–122(4)[9] ("§ 3–122(4)"), which measures prejudgment interest from the date of accrual of the cause of action, rather than New Jersey court rule 4:42–11(b), which measures prejudgment interest from the date of the institution of the claim.[10] On the other side, Fidelity argues that the district court applied the correct rule but should have held an evidentiary hearing to determine whether this was an exceptional case under rule 4:42–11(b) not requiring prejudgment interest.

Neither of these arguments is persuasive. In applying rule 4:42–11(b), the district court followed the only judicial decision applying New Jersey law on point, *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750 (3d Cir.1990). The *McAdam* court found that the U.C.C. did not provide for prejudgment interest on conversion claims brought under § 3–419. *Id.* at 773–74. As a leading commentator on the U.C.C. has stated:

> The Code makes no provision relating to the recoverability of prejudgment interest in an action based on UCC § 3–419. As such action is tortious in character, the recoverability of prejudgment inter-

est will be governed by the pre–Code law relating to the recovering of such interest in tort actions.

6 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 3–419:33 at 434 (3d ed. 1984). We have no reason to take issue with the Third Circuit on this point, and, accordingly, we find that the district court applied the correct rule in determining prejudgment interest.

Fidelity's argument that the district court erred in charging any prejudgment interest is also meritless. Decisions by trial courts regarding the suspension of prejudgment interest are given great deference and reviewed under an abuse of discretion standard. *See Kotzian v. Barr*, 81 N.J. 360, 408 A.2d 131, 133 (1979). Fidelity bases its claim on the fact that the district court did not allow an evidentiary hearing on whether exceptional circumstances could be shown. There is nothing in rule 4:42–11(b) to suggest that a party has the right to an evidentiary hearing concerning this issue, and, therefore, a denial does not give grounds for reversal.

## CONCLUSION

Accordingly, the judgment of the district court is affirmed.

---

**8.** Although Fidelity's attempt to apply § 3–404 without the commercial reasonableness test is not persuasive under current New Jersey law, we recognize that applying recent revisions to the U.C.C. would result in a different outcome. Under the revised U.C.C., the all-or-nothing approach of § 3–406 is replaced by comparative negligence principles. *See* Uniform Commercial Code Rev. Art. 3, §§ 3–403 to 3–406 2 U.L.A. 267–76 (1992); *see also* Donald W. Garland, *A New Law of Negotiable Instruments: Revised Article 3 of the UCC*, 109 Banking L.J. 557, 576 (1992). New Jersey, however, has not as yet adopted these revisions.

**9.** The statute reads in pertinent part:
> Unless an instrument provides otherwise, interest runs at the rate provided by law for a judgment

> (a) in the case of a maker, acceptor or other primary obligor of a demand instrument, from the date of demand;
> (b) in all other cases from the date of accrual of the cause of action.

N.J.Stat.Ann. § 12A:3–122(4) (West 1992).

**10.** Rule 4:42–11(b) provides, in pertinent part:
> except as otherwise provided by law, the court shall, in tort actions, ... include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest.

N.J.Sup.Ct.R. 4:42–11(b).