279 N.J. Super. 48 (1995)
652 A.2d 199
MARTIN GLENNON, INC., PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
FIRST FIDELITY BANK, N.A., DEFENDANT-APPELLANT, CROSS-RESPONDENT, AND LIVIO RUSSO, AMERICAN NATIONAL B & T OF CHICAGO, AMERITRUST, N.A., BANCOHIO NATIONAL BANK, BANCO CENTRAL, BANK ONE, COLUMBUS, N.A., BANK OF AMERICA NT & SA, BARNETT BANK OF SOUTH FLORIDA, N.A., BAYBANK BOSTON, N.A., CALIFORNIA UNITED BANK, N.A., CHITTENDEN TRUST COMPANY, CITIBANK DELAWARE, CITIBANK, N.A., CITIZENS BANK & TRUST COMPANY, CITIZENS FIRST NATIONAL BANK OF NJ, CITIZENS & SOUTHERN NATIONAL BANK OF FLORIDA, CONSOLIDATED BANK, N.A., DELAWARE TRUST COMPANY, DOWNERS GROVE NATIONAL BANK, EAGLE NATIONAL BANK OF MIAMI, FIDELITY BANK, N.A., FIRST UNION NATIONAL BANK OF FLORIDA, FIRST WISCONSIN NATIONAL BANK OF PRINCETON, FLEET NATIONAL BANK, JEFFERSON NATIONAL BANK, KEY BANK OF EASTERN, NEW YORK, N.A., LA SALLE NATIONAL BANK, LIBERTY NATIONAL BANK & TRUST CO. OF LOUISVILLE, MARINE MIDLAND BANK, N.A., MIDLANTIC NATIONAL BANK NORTH, MITSUI MANUFACTURE'S BANK, MORGAN BANK (DELAWARE), MORGAN GUARANTY TRUST OF NEW YORK, NBD BANK, N.A., NCNB NATIONAL BANK N.A. OF FLORIDA, NCNB TEXAS NATIONAL BANK OF DALLAS, TEXAS, NCNB OF NORTH CAROLINA, NATIONAL WESTMINSTER BANK USA, NORSTAR BANK, NORTHERN TRUST BANK/DUPAGE, OCEAN BANK, PUGET SOUND BANK/BANCONE, SAFRA BANK (CALIFORNIA), THE BANK OF NEW HAVEN, THE BANK OF NEW YORK COMPANY, THE CHASE MANHATTAN BANK, N.A., THE DAIWA BANK LIMITED, THE HUNTINGTON NATIONAL BANK, UNION BANK, WACHOVIA BANK & TRUST COMPANY, WELLS FARGO, N.A., ABC BANKS 1 THROUGH 20, NAMES BEING FICTITIOUS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1994.
Decided January 20, 1995.
*52 Before Judges DREIER, VILLANUEVA and WEFING.
Seth L. Taube argued the cause for appellant (McCarter & English, attorneys; Joseph Lubertazzi, Jr., of counsel, William D. Wallach, on the brief).
William L. Gold argued the cause for respondent (Brown, Gold & Beck, attorneys; Mr. Gold, on the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
Defendant First Fidelity Bank, here sued as the depository bank of checks bearing allegedly forged endorsements, appeals from a summary judgment for conversion and holding it responsible to the named payee for the proceeds of the instruments. Plaintiff, Martin Glennon, Inc. as the successor in interest to S.S. Koppe & Co., Inc., claimed in its complaint that First Fidelity and Koppe's erstwhile bookkeeper, Livio Russo, as well as the various drawee banks, were liable to plaintiff on the ground of conversion. Plaintiff also claimed that First Fidelity and the various drawee banks were liable to it for negligence and for violations of the Uniform Commercial Code. Plaintiff cross appeals from the court's denial of plaintiff's motion to dismiss for defendant's failure to answer interrogatories. There was no issue in the case concerning defendant Livio Russo's criminal liability, and the claims against the various drawee (payor) banks were severed, leaving only plaintiff's claims against First Fidelity for adjudication.
Plaintiff successfully moved for summary judgment, but unfortunately we have been given no assistance from the trial judge concerning the reasons for its entry. See R. 1:7-4; 2:5-1(b) (requiring an opinion from the judge). The judge merely found *53 that the bank was "solely responsible for everything" as a matter of law. His only elaboration to counsel was that he did not want to "bore [them] with a long detailed opinion" because the "facts speak for themselves." Such an opinion is of no aid to appellate review. As we have the briefs and certifications that were available to the trial judge, we have reassessed the matter and have determined independently that summary judgment was proper.
Plaintiff contends on its cross appeal that defendant's answer should have been stricken with prejudice for failure to answer interrogatories, and therefore none of the issues raised by defendant should be considered. Although we find this question to be a close one, we determine that the earlier motion judge who reviewed this case was within his discretion to find that exceptional circumstances existed to relax R. 4:23-5(a)(2).
There is no question that there was first a dismissal without prejudice pursuant to R. 4:23-5(a)(1) for defendant's failure to respond to discovery demands. There then was a proper motion on notice to defendant to strike defendant's answer with prejudice. The exceptional circumstances alleged here were set forth in representations made to the court in the eleven-page letter from defendant's counsel of record. While it would have been better had this letter been put in certification form, we note that it was accepted by the judge. It explained that although McCarter & English was counsel of record for defendant, the law suit had been tendered through the bank's insurance carrier to an "insurance company selected law firm" which was responsible for discovery. This attorney was later fired due to inaction, and defendant allegedly then provided the discovery.
Inaction is usually an insufficient excuse. The "exceptional circumstances" are usually confined to "poor health or emergency" or the like. Rodriguez v. Luciano, 277 N.J. Super. 109, 112, 649 A.2d 87 (App.Div. 1994). It was the responsibility of defendant's attorneys of record to supervise discovery, even by outside counsel retained by it or its client. This was, however, more than the ordinary "administrative problems in [defendant's] attorney's office" *54 discussed in Rodriguez, where the trial judge reached the opposite decision. While we might also have reached a different result from the motion judge in this case, there is some breadth of discretion encompassed within the "exceptional circumstances" language of the rule. We acknowledge that the motion judge acted within the outer limits of his discretion in granting First Fidelity's application to reinstate its answer. We also note that the granting of the motion did not materially affect the outcome of the case. We therefore affirm on the cross appeal.
S.S. Koppe & Co., Inc. (Koppe) was purchased by Joleen and Thomas Martin in December 1982 and renamed Martin Glennon, Inc. It continued, however, to operate under the name S.S. Koppe & Co., Inc. with Joleen Martin as its president. The company's business was the obtaining of advertising from advertising agencies, individuals and companies in the United States for publication, broadcast and telecast in the Caribbean, Central and South America, the Arabic states and the Pacific rim. The company consisted of five individuals, four working in the advertising end of the business and one bookkeeper.
The facts governing defendant's appeal are not in dispute. When Russo was hired as plaintiff's bookkeeper, his authorized duties were limited to stamping the checks with a deposit stamp reading "S.S. Koppe & Co., Inc., For Deposit Only" and bearing the name of National Bank & Trust of Kearny. He was then required to enter the information concerning the check into the company's cash receipt book. The company also maintained an incoming mail log in which all incoming mail was recorded and, if checks were enclosed, the pertinent information concerning the checks. Unfortunately, no one in the corporation had the specific duty of comparing the mail log with the deposit slips or the individual account ledgers.[1] Apparently, it was assumed that all *55 of the checks would find their way into plaintiff's bank account after suitable notations on the correct ledgers. Plaintiff's owners believed that they were adequately protected against embezzlement by Russo because he had no authority to sign checks, he rarely made the physical deposits at the bank and an accountant regularly reviewed the corporate books.
Russo's scheme was to appropriate various checks as they were given to him. Although the notation concerning the checks had been recorded in the incoming mail log, they were never entered on the customers' ledgers, and thus over a period of time a customer who was paying promptly would appear to have become more and more delinquent. Since Russo did not appropriate all the checks from any particular customer, this delinquency and apparent build up of the company's accounts receivable was gradual, making it appear that the general practice of plaintiff's customers was to make payment on a more extended basis. Over the years 1986 and 1987, the company's accounts receivable grew from $111,865 to $516,718. During this period Russo stole $451,045.22. Therefore, although the company's accounts receivable actually decreased during this period, it appeared from the company's books that Koppe was suffering from a serious payment problem from its customers. It was only when the company was sold and the owners remembered a particular $8,000 check which they thought should have been paid but did not show on the records that they inquired of their former customer. When they were told that the check had been paid and were read the payment information from the check, they began to inquire at the depository shown on the check, First Fidelity Bank, and the fraudulent scheme came to light.
Russo, in fact, had ordered a new deposit stamp merely stating "S.S. Koppe." He then had gone to First Fidelity, his own bank, *56 and explained that he was opening a rent security deposit account in a different name since he did not want to commingle the security funds with his own. The name on the account was "S.S. Koppe." Notwithstanding the fact that the vast majority of the checks were made payable to "S.S. Koppe & Co., Inc." and thus clearly were checks made payable to a corporate payee, defendant permitted the deposit of these checks into Russo's bogus account. Despite Russo's explanation to the bank that the account was for rent security deposits, none of the formalities usually associated with such accounts were accomplished. See N.J.S.A. 46:8-19. The bank noted nothing unusual about the sizeable deposits payable to a corporate payee being made into this individual account and immediately withdrawn by Russo personally.
Defendant has raised four issues on this appeal: first, that N.J.S.A. 12A:3-404 should have been found available as a defense to plaintiff's conversion claim; second, that N.J.S.A. 12A:3-406 and 3-419(3) similarly provided a viable defense; third, that there were material questions of fact that precluded summary judgment; and, fourth, plaintiff should not have been held entitled to prejudgment interest. We will treat these issues in a different order.

I
Although defendant's third issue asserts that there were factual matters still in dispute, it has also raised alleged factual issues in the first two points of its brief. We have, of course, considered the record in a factual light most favorable to defendant, resolving all doubts against plaintiff. Ruvolo v. American Casualty Co., 39 N.J. 490, 499, 189 A.2d 204 (1963). From our review of the record we see no factual issues remaining in this case. There may be questions of legal construction, but the facts appear clear. Consequently, if the law supports plaintiff's claim and provides no defense to defendant, plaintiff is entitled to a judgment as a matter of law. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954).

*57 II

We start with the propositions that under N.J.S.A. 12A:3-419(1)(c) an instrument is converted when it is paid on a forged endorsement, and a depository bank warrants to the drawees that all signatures are genuine N.J.S.A. 12A:3-417(2), also making it liable to the drawer for conversion. Defendant, however, claims that the defense described in N.J.S.A. 12A:3-419(3) applies. This section provides a defense to a depository bank to conversion beyond the amount of the funds still in the hands of the bank if the bank has dealt with the instrument "in good faith and in accordance with the reasonable commercial standards applicable to the [bank's] business...." Although defendant contends that the issue of commercial reasonableness is one of fact which should not be determined on a motion for summary judgment, in this instance it is actually one of law. There is no question that the bank knew that and treated Russo's "S.S. Koppe" account as a personal account. There is also no question that it permitted Russo to deposit into the account checks clearly made payable to a corporation and then to withdraw the funds. Reasonable commercial standards in such a case are defined by law, and there is a series of cases in New Jersey clearly stating that it is negligent for a bank to permit the deposit of a check payable to a corporation into an individual account. See, e.g., Singer Sewing Machine Co. v. Citizens Nat'l Bank & Trust Co., 111 N.J.L. 199, 168 A. 32 (Sup.Ct. 1933), aff'd o.b., 112 N.J.L. 497, 171 A. 796 (E. & A. 1934); Budelman v. White's Express & Transfer Co., 49 N.J. Super. 511, 140 A.2d 552 (App.Div. 1958); Silver v. Commonwealth Trust Co., 22 N.J. Super. 604, 92 A.2d 152 (Law Div. 1952). Thus, the bank's actions in clear violation of this established law could not be found to have been "in accordance with the reasonable commercial standards applicable to the [bank's] business."
Furthermore, First Fidelity claimed otherwise in Lou Levy & Sons Fashions, Inc. v. Romano (In re Lou Levy & Sons Fashions, Inc.), 785 F. Supp. 1163 (S.D.N.Y. 1992), aff'd, 988 F.2d 311 (2nd Cir.1993). There defendant was the depository bank into *58 which a sales manager had deposited 188 checks forged with the plaintiff's corporate endorsement. An accomplice made debit entries as credits for defective goods or to similar accounts in order to cover the converted payment checks. In Lou Levy, defendant specifically "concede[d] that accepting checks payable to a corporate payee for deposit into a personal account is unreasonable as a matter of law...." 988 F.2d at 314. While defendant still contended in Lou Levy that it was entitled to raise the defense of plaintiff's negligence, an issue that will be discussed infra, defendant's contradictory positions are evident and troublesome.[2]See Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 620, 581 A.2d 91 (App.Div. 1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991), and the cases there cited; Levin v. Robinson, Wayne & LaSala, 246 N.J. Super. 167, 178, 586 A.2d 1348 (Law Div. 1990) and the cases there cited. Defendant does not claim that the law changed or that it overlooked controlling authority in Lou Levy; it simply has taken an inconsistent position here.
The bank's responsibility for conversion of the checks is therefore established under N.J.S.A. 12A:3-419, unless another defense is applicable. See Knesz v. Central Jersey Bank & Trust Co. of Freehold, 97 N.J. 1, 21-22, 477 A.2d 806 (1984).

III
Defendant next contends that N.J.S.A. 12A:3-404 bars plaintiff from any recovery. The statute reads:
(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.
(2) Any unauthorized signature may be ratified for all purposes of this Chapter. Such ratification does not of itself affect any rights of the person ratifying against the actual signer.
[N.J.S.A. 12A:3-404].
*59 Applying section (1) to this case, we must conclude that the rubber stamp "S.S. Koppe" was wholly inoperative unless plaintiff either had ratified its application or was otherwise precluded from denying it. Defendant asserts that the endorsements were actually ratified. To this end it cites Stella v. Dean Witter Reynolds, Inc., 241 N.J. Super. 55, 574 A.2d 468 (App.Div.), certif. denied, 122 N.J. 418, 585 A.2d 412 (1990). In Stella, a defrauding stockbroker convinced the plaintiff, Sykes, to withdraw funds from his brokerage account. In the first few transactions the funds were withdrawn payable to the investor who endorsed the checks to the defrauding broker. After several such transactions, the broker had the investor authorize additional withdrawals from his account, but the broker rather than Sykes signed the investor's name. Sykes acknowledged that the money was withdrawn with the intention that it be transferred to the broker, and he had authorized the transfers out of his brokerage account for investment by the broker into the same "Special Situations Fund" in which the initial checks were allegedly invested. When it later appeared that there was no such fund and the broker had converted the proceeds, the investor alleged that his signature had been forged on the later checks. The court held, however, that these signatures had been ratified. The court noted that the investor knew all of the material facts concerning the transfer of the funds, even though he may have been defrauded concerning the nature of the alleged investment. 241 N.J. Super. at 66-67, 574 A.2d 468. These facts bear no resemblance to the case before us where Russo physically stole the checks and forged the corporate endorsement, all without the knowledge of plaintiff's principals.[3]
Defendant claims that the endorsement actually was not forged because Russo was an authorized signatory since he had been authorized to stamp the checks for deposit into plaintiff's bank *60 account. Russo's authority was limited to the ministerial function of placing the deposit stamp on the back of the check. He had no authority to endorse the checks for negotiation or physically to appropriate the checks or their proceeds.
As is noted in Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 361, 354 A.2d 291 (1976), the definition of ratification is "the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." (Quoting from Restatement (Second) of Agency § 82 (1957)). Ratification, therefore, requires an
intent to ratify plus full knowledge of all the material facts. Ratification may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act; from inaction; or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act.
[Ibid. (citations omitted).]
Ratification may be also be determined as a matter of law. Id. at 362, 354 A.2d 291.
In Thermo Contracting, plaintiff was deemed to have ratified unauthorized endorsements where it had been confronted with the endorsements in November 1971 but made no objection or claims against the banks or the drawer until May 1972. In the interim, plaintiff had a significant economic stake in continuing its business with the subcontractor and did not object until the subcontractor stopped working on plaintiff's job. Id. at 358-359, 362, 354 A.2d 291. Such facts bear no similarity to those in our case. Here, information did exist within plaintiff's business, namely in the mail logs, to have permitted detection of Russo's scheme. But there is no basis for the slightest inference that plaintiff was aware of this scheme and permitted Russo to endorse and steal its incoming checks until the events described earlier when the scheme was revealed by chance.
Defendant also urges that ratification may be based upon mere negligence. Case law is clearly to the contrary. While other authority might be cited, we need look no further than *61 defendant's own concession in Lou Levy & Sons Fashions, Inc. v. Romano, supra. There defendant raised the same argument, but was faced with the ruling that ratification could not be based on negligence because "ratification involves knowing and intentional conduct, not mere negligence." 785 F. Supp. at 1167. Further, defendant "dropped the ratification defense, conceding that ratification cannot be based upon negligence." Ibid.
Defendant, therefore, has no basis in law or fact to urge that plaintiff ratified Russo's endorsements.

IV
Defendant also claims that it was entitled to raise N.J.S.A. 12A:3-406 as a defense. The statute reads:
Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

[Emphasis added].
First Fidelity claims that the negligence of plaintiff is demonstrated by its not checking its mail log against deposits on a periodic basis or instructing its accountant to do so, especially when the accounts receivable soared. Further, defendant reasons, after a reasonable period this alleged negligence contributed to the unauthorized endorsement because the practice would have stopped had there been proper supervision of the account. The problem with this defense is that it may only be asserted by a drawee (therefore not First Fidelity Bank) or another payor. A payor bank is defined in N.J.S.A. 12A:4-105(b) as "a bank by which an item is payable as drawn or accepted." First Fidelity Bank was a depository bank, not a payor bank.
Even if the rules in N.J.S.A. 12A:3-406 were applicable to a depository bank, the defense can only be asserted by a bank who paid in good faith and in accordance with reasonable commercial standards. As noted earlier, and as was admitted by defendant in *62 Lou Levy & Sons Fashions, Inc., supra, there was no reasonable commercial standard permitting the deposit of these checks. Defendant again is without a legal or factual basis to assert a defense pursuant to N.J.S.A. 12A:3-406.

V
The final point to be considered in this matter is the award of prejudgment interest. The trial judge awarded prejudgment interest starting thirty days after the deposit of the last check.
The question in this case is whether N.J.S.A. 12A:3-122(4)(b) applies or whether the claim in this case for conversion relegates plaintiff to prejudgment interest as provided in other tort actions. See R. 4:42-11(b). N.J.S.A. 12A:3-122, entitled "Accrual of Cause of Action," has four subparts. The first three define the date of accrual against various potential parties, i.e., a maker, acceptor, obligor of a demand or time certificate of deposit, drawer of a draft or indorser of any instrument. Section four provides:
Unless an instrument provides otherwise, interest runs at the rate provided by law for a judgment.
(a) in the case of a maker, accepter or other primary obligor of a demand instrument, from the date of demand;
(b) in all other cases from the date of accrual of the cause of action.
[N.J.S.A. 12A:3-122(4).]
From this context, it is clear to us that subsection four provides for accruals of causes of actions based upon an instrument, not the tort of converting the instrument. According to Hawkland, "the drawee is not liable for ... prejudgment interest" for conversion under the U.C.C. William D. Hawkland, Uniform Commercial Code Series § 3-419:10 (1992). In Ronald A. Anderson, Uniform Commercial Code, (3d. ed. rev. 1993) § 3-419:60, the author states that "[t]he Code makes no provision relating to the recoverability of prejudgment interest in an action based on U.C.C. § 3-419. As such action is tortious in character, the recoverability of prejudgment interest will be governed by the pre-Code law relating to the recovering of such interest in tort actions." We agree with these statements. We do not disagree *63 with plaintiff's well-supported statement that a cause of action for conversion accrues on the date of conversion, but N.J.S.A. 12A:3-122 does not apply to this tort.
Plaintiff is therefore relegated to R. 4:42-11(b) which provides for simple interest in tort actions from the date the action is instituted or from "6 months after the date the cause of action arises, whichever is later...." There is also a provision for the suspending of interest in exceptional cases, but we see no such circumstances here. Interest, therefore, should run from the date the complaint was filed, not from thirty days after the deposit of the last check.
With the exception of our amendment of the date upon which prejudgment interest should commence, the summary judgment granted plaintiff against the defendant bank is affirmed for the reasons set forth herein, and the matter is remanded to the Law Division for entry of a corrected judgment.
NOTES
[1] There was actually a second check upon the accounts in that plaintiff had a periodic compilation review for tax purposes by its accountant. Plaintiff, however, did not request an independent audit of its books or an inspection of the relevant documents that would have disclosed this scheme. While the report did show the increase in accounts receivable, plaintiff was not alerted to Russo's scheme.
[2] Given the clear legal basis to find First Fidelity's actions commercially unreasonable, we need not reach the issue of whether the bank is judicially estopped from raising here a position contrary to that it took in Lou Levy.
[3] In Lou Levy & Sons Fashions, Inc., supra, defendant also attempted to claim that Stella barred plaintiff's claim. The argument was rejected out of hand as "of no real assistance to First Fidelity," 785 F. Supp. at 1167.