**JUSTUS COMPANY, INC., Plaintiff,**

v.

**GARY WHEATON BANK et al., Defendants.**

**No. 80 C 1150.**

United States District Court,
N. D. Illinois, E. D.

Feb. 17, 1981.

Michael J. Gill, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff.

Morris A. Gzesh, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Justus Company, Inc. ("Justus") brings this diversity action against Gary Wheaton Bank ("Gary Wheaton") and Bank of Westmont ("Westmont") for the allegedly unlawful cashing of three checks. Gary Wheaton has moved (1) to be dismissed from both counts of the Complaint[1] and (2) for the entry of a protective order barring certain of Justus' document requests. For the reasons stated in this memorandum opinion and order, both of Gary Wheaton's motions are denied.

### Facts[2]

Justus manufactures and sells cedar home packages. In the spring of 1978 Arthur and Edith Nissen purchased a home from Justus through its Illinois dealer Warner-Dutzi, Inc. Nissens attempted to pay Justus by delivering three checks to Warner-Dutzi, one payable to Justus and Warner-Dutzi jointly and two payable to Justus alone.[3] Robert Dutzi, president of Warner-

---

1. Westmont has answered the Complaint.

2. On Gary Wheaton's motion to dismiss, all "facts" must be taken as alleged in the Complaint. This Court does not of course make or imply any findings in that respect.

3. Under the terms of the purchase contract Nissens agreed to purchase the home from

Warner-Dutzi, which in turn committed itself to order the home from Justus subject to the latter's approval. Nissens were obligated to pay the purchase price directly to Justus, to whom Warner-Dutzi had assigned its payment rights to secure its payment obligations to Justus.

Dutzi, improperly endorsed the checks and deposited them in Warner-Dutzi's account at Gary Wheaton. Gary Wheaton then presented the checks to Westmont, which paid out the requested sums and charged Nissens' account. In Count I Justus (as the assignee of Nissens' cause of action) sues both banks for negligence. In Count II Justus bases its action on its own rights as a payee denied the benefits of the checks.

### Count I

■ Because this Court's jurisdiction is grounded on diversity, Illinois law controls all matters of substance. Gary Wheaton argues that it should be dismissed from Count I because under Illinois law a drawer has no cause of action against a bank where a check is deposited. Justus argues to the contrary.

No direct answer is provided by the Uniform Commercial Code. Code Section 3–419 (Ill.Rev.Stat. ch. 26, § 3–419), which deals with conversion, states:

(1) An instrument is converted when

    \*    \*    \*    \*    \*    \*

    (c) it is paid on a forged endorsement.

    \*    \*    \*    \*    \*    \*

(3) Subject to the provisions of this Act concerning restrictive endorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

Subsection 1(c) does not indicate who are proper defendants. Subsection 3 deals only with actions by "true owners," a concept that generally means the payees. *See,* White and Summers, *Handbook on the Law Under the Uniform Commercial Code* § 15–4, at 585–86 (2d ed. 1980). Consequently

most courts have held that it is necessary to look to non-Code law to determine whether the *drawer* of a check has a cause of action against a depositary bank. *Stone & Webster Engineering Corp. v. First National Bank and Trust Co.,* 345 Mass. 1, 184 N.E.2d 358 (1962). Unfortunately the current state of the law in Illinois on this question is not entirely clear.

In a pre-Code case, *Gustin-Bacon Mfg. Co. v. First National Bank,* 306 Ill. 179, 137 N.E. 793 (1922), the Illinois Supreme Court permitted a drawer to recover from a depositary bank in an action based on a forged endorsement. *Accord, United States Fidelity & Guaranty Co. v. Peoples National Bank,* 24 Ill.App.2d 275, 164 N.E.2d 497 (2d Dist. 1960). Those cases would unquestionably be controlling but for the possible effect of the Comment to Section 3–419(3): [4]

> This subsection introduces a new rule. See Official Comment 5. Under one pre-Code Illinois decision a collecting bank was held liable to a drawer when it had dealt with an instrument bearing a forged endorsement, even though it no longer held the proceeds thereof. *Gustin-Bacon Mfg. Co. v. First National Bank,* 306 Ill. 179, 137 N.E. 793 (1922). This subsection would require a different result in that situation, as would subsection (1) since a drawer would have no action for conversion thereunder but would be relegated to his action against his drawee bank under § 4–401.

That Comment is difficult to justify. Certainly the bare language of Section 3–419 does *not* preclude actions by drawers against depositary banks. *See, Allied Concord Financial Corp. v. Bank of America,* 275 Cal.App.2d 1, 80 Cal.Rptr. 622, 624 (1969). Yet the Comment cites no case authority for its Code interpretation.

Under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, this Court is duty-bound to follow established

---

4. Smith-Hurd Illinois Annotated Statutes include an unofficial set of "Illinois Code Comments" by private practitioners who were ac- tively involved in securing passage of the Code by the Illinois General Assembly.

Illinois precedents unless it is plain that they would no longer be viewed as controlling by the Illinois Supreme Court. *See Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 285 ff. (3d Cir. 1980); *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147 at n.2 (D.C.N.D.Ill. 1981). Comments like that quoted above were prepared by knowledgeable lawyers in the field but are not official statements of the Illinois General Assembly (and unlike most jurisdictions, Illinois cases do not recognize the usual concept of legislative history). Thus because pre-Code Illinois case law specifically permitted an action by a drawer against a depositary bank, and because neither the language of the Code nor any later case development expressly rejects (or even strongly suggests rejection of) that result, such an action remains a part of Illinois law.[5] Accordingly, Justus as Nissens' assignee can maintain this action against Gary Wheaton.

### Count II

In Count II Justus asserts its rights as a payee denied the proceeds of the checks. Gary Wheaton does not contest a payee's ability to bring an action against a depositary bank, but it argues that such an action is possible only if the payee has secured actual possession of the check. That was not the case here, for the checks never reached Justus.

In *First National Bank of Chicago v. Pease*, 168 Ill. 40, 42, 48 N.E. 160 (1897), the Illinois Supreme Court held:

> Where a bank pays a bill or check on a forged endorsement it is liable to some one for funds so wrongfully paid out. The liability must be to the drawer or to the payee. If the instrument belongs to the payee, the liability is to him; if it has

never been received by the payee and he has no interest therein, then it belongs to the drawer.

Since that early case the Illinois courts have not had occasion to refine the concept of when a payee receives, or has an interest in, a check.

This case involves a situation in which the drawer gave up actual possession of the checks but the payee never took physical possession. Any attempt to determine who had the stronger interest in the check at the time of the forgery and is thus entitled to the cause of action raises issues of fact. Gary Wheaton points out that the contract for the sale of the home characterizes Warner-Dutzi as an independent contractor, not an agent of Justus. But surely Illinois courts have not rejected all notions of constructive possession. *See, Trustees of Danvers Literary & Library Ass'n v. Skaggs*, 280 Ill.App. 125 (3d Dist. 1935); *Burr v. Beckler*, 264 Ill. 230, 106 N.E. 206 (1914). Justus may be able to establish that delivery to Warner-Dutzi, though it was an independent contractor, constituted delivery to Justus.[6]

It should be pointed out that Justus cannot recover under both Counts I and II. If this Court were ultimately to find in favor of Justus on Count II, Nissens would have suffered no harm. Conversely, if Justus prevails as Nissens' assignee under Count I, Justus would have no cause of action in its own right against the banks but would be able to "collect" from the Nissens. In essence the Complaint states alternative causes of action, with the proper theory hinging on the nature of the attempted delivery. Because that is a factual issue, Justus should not be forced to choose, at this stage

---

5. One possible interpretation of the Illinois Code Comment, and for that matter of Section 3-419, is that a drawer has the same rights as a true owner. Thus absent a showing of commercially unreasonable activity or some retention of the proceeds by the depositary bank, drawers might be relegated to actions against drawee banks. But the precise contours of Justus' action need not be determined at this stage of the proceeding, for it is clear that a cause of action has been stated.

6. It may be noted that the form of contract prepared by Justus and used by Warner-Dutzi contains no address for payment to Justus. It merely identifies the home office as being in Tacoma, Washington, and in a separate section lists a Justus address for the presentation of warranty claims. Under the circumstances Justus might well be considered to have led purchasers to deliver payments to the Justus dealer as agent solely for transmittal to Justus.

of the proceedings, between viable legal theories. Accordingly, Justus can maintain an action against Gary Wheaton.

### Protective Order

 Justus has served a request for production on Gary Wheaton seeking documents with endorsements similar to those on the checks involved in this action. Gary Wheaton has moved for a protective order arguing that the request is overbroad and would encompass documents protected by the attorney-client privilege.

Justus has agreed to limit its request to records of transactions for the period between January 1, 1978 and June 1, 1979. Given that limitation and the low threshold of discoverability established by Fed.R. Civ.P. ("Rule") 26, the request cannot be held unreasonable. It has not been established as a matter of law that the handling of other checks with similar endorsements is irrelevant to the issues regarding the three checks in suit.[7]

In the shotgun manner it is made, Gary Wheaton's assertion of attorney-client privilege borders on the frivolous. Gary Wheaton has not identified, or even stated whether the document request actually covers, any privileged documents. Any assertion of the attorney-client privilege must contain a description of the nature of specific documents (or an in camera submission) before this Court can determine if the privilege applies.

### Conclusion

Gary Wheaton's motion to dismiss Counts I and II under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is denied. Gary Wheaton is ordered to answer the Complaint on or before March 3, 1981. Gary Wheaton's motion for the entry of a protective order is also denied.

---

**7.** Gary Wheaton argues that the discovery is largely relevant in opposition to Westmont's affirmative defenses, that those defenses are insufficient as a matter of law and that the discovery is therefore irrelevant. This Court will not undertake an examination, solely at

Gary Wheaton's request, of the legal sufficiency of Westmont's affirmative defenses. It must be assumed that Justus has acted in good faith in not challenging, at this time, the legal basis of those affirmative defenses.