**BANK POLSKA KASA OPIEKI, S.A., Plaintiff,**

v.

**PAMRAPO SAVINGS BANK, S.L.A., and Chemical Bank, Defendants.**

**PAMRAPO SAVINGS BANK, S.L.A., Third–Party Plaintiff,**

v.

**Donald MELIADO, Esq., Third– Party Defendant.**

**The CHASE MANHATTAN BANK, N.A., Fourth–Party Plaintiff,**

v.

**FEDERAL HOME LOAN BANK OF NEW YORK, Pamrapo Savings Bank, S.L.A., Bank Polska Kasa Opieki, S.A. and Donald Meliado, Esq., Fourth–Party Defendants.**

**Civ. No. 94–633 (WGB).**

United States District Court, D. New Jersey.

Dec. 11, 1995.

Barry & McMoran by John J. Barry, Judson L. Hand, Colleen D. Shiarella, Newark, N.J., for Defendant/Third Party Plaintiff, Pamrapo Savings Bank, S.L.A.

Saiber, Schlesinger, Satz & Goldstein by James H. Forte, Newark, N.J., for Defendant, Chemical Bank.

Haight, Gardner, Poor & Havens by Gary D. Sesser, Cristina M. Brennan, New York City and Goldstein, Till & Lite by Allyn Z. Lite, Charles Quinn, Newark, N.J., for Plaintiff, Bank Polska Opieki, S.A.

Connell, Foley & Geiser by Michael X. McBride, John H. Denton, Roseland, N.J., for Defendant Chase Manhattan Bank, N.A.

Vorhees & Acciavati by Christopher J. Bednarz, Morristown, N.J., for Defendant Donald J. Meliado.

Karcher, Slamond, Ronan & Rainone by Alan J. Karcher, Louis N. Rainone, Edison,

N.J., for Defendant Federal Home Loan Bank of New York.

BASSLER, District Judge:

This matter comes before the Court on the motions of: (1) Defendant and Third–Party Plaintiff, Pamrapo Savings Bank, S.L.A. ("Pamrapo"), for summary judgment dismissing Counts Six (conversion under the Uniform Commercial Code ("U.C.C.")), Seven (breach of U.C.C. transfer warranties) and Eight (common law negligence) asserted by Bank Polska Opieki, S.A. ("Bank Polska") in its Amended Complaint; (2) Fourth–Party Plaintiff, The Chase Manhattan Bank, N.A. ("Chase Manhattan"), for summary judgment granting indemnification and attorneys' fees under U.C.C. § 4–207 (U.C.C. warranty); (3) Third– and Fourth–Party Defendant, Donald Meliado ("Meliado"), for summary judgment dismissing the claims for indemnification and contribution asserted against him by Pamrapo and Chase Manhattan. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons set forth below: (1) Pamrapo's motion for summary judgment is **granted;** (2) Chase Manhattan's motion for summary judgment is **granted in part and denied in part;** and (3) Meliado's motion for summary judgment is **denied.**

## I. *BACKGROUND*

These motions raise intricate issues regarding the U.C.C. loss allocation scheme and how it should be applied when a forged instrument enters banking channels.

The underlying dispute involves a $2,000,000.00 check, drawn by Bank Polska on its account with the drawee bank, Manufacturer's Hanover Trust ("MHT")[1], now Chemical Bank ("Chemical"), that was allegedly forged by Andrzej Smolinski ("Smolinski"). (Amended Compl. at ¶ 10).

Bank Polska allegedly entered into a loan agreement with Smolinski–Elektronik, a Polish corporation owned by Smolinski. (Plaintiff's Brief in Opposition to Defendant Pamrapo Savings Bank, S.L.A.'s Motion for Summary Judgment at 3–4). Pursuant to the

loan agreement and allegedly without adequately investigating Smolinski's financial background, Bank Polska provided Smolinski with the $2,000,000.00 check, which was made payable to "Braxton Industries, New York USA."

Smolinski then came to the United States and engaged Meliado, a New Jersey attorney, to assist him in incorporating Braxton Industries, Inc., (Meliado Cert. at ¶ 3), which Meliado formed. (*Id.*). Several days later, Smolinski returned to Meliado's office with the $2,000,000.00 check to seek assistance in opening up a corporate account. (*Id.* at ¶ 7). Meliado suggested Pamrapo and accompanied Smolinski to Pamrapo to open the account. (*Id.* at ¶ 10). While at the bank, Pamrapo alleges that Meliado made certain representations concerning Smolinski's financial means and his authority to indorse the $2,000,000.00 check. (*See* Memorandum on Behalf of Pamrapo Savings Bank, S.L.A. in Opposition to Donald J. Meliado's Motion for Summary Judgment at 1–2). Meliado denies having made any representations to Pamrapo.

Smolinski allegedly forged an endorsement to the check, deposited the $2,000,000.00 in the Pamrapo corporate account Meliado and he established, and eventually withdrew substantial sums of the money. The United States Attorney's Office subsequently brought criminal charges against Smolinski for his actions in connection with the $2,000,000.00 check.

Pamrapo, the depositary bank, allegedly accepted the forged check for deposit and placed it in the collection process. (Amended Compl. at ¶¶ 17–20). Pamrapo forwarded the check to Federal Home Loan Bank of New York ("New York Bank"). (Chase Manhattan's Rule 12G Statement at ¶ 1). New York Bank then transferred the check to Chase Manhattan, which forwarded it to Chemical. Chemical eventually debited Bank Polska's account $2,000,000.00. (*Id.* at ¶¶ 2–3).

---

**1.** MHT is the predecessor in interest to Chemical. Throughout the rest of the Opinion, there- fore, the Court will refer only to Chemical.

Chemical earlier moved this Court to dismiss the claims Bank Polska asserted against Chemical. By Opinion and Order dated January 24, 1995, this Court dismissed Counts One, Two and Three of Bank Polska's Amended Complaint, which asserted claims of negligence and conversion against Chemical. (*See* Opinion and Order dated January 24, 1995, at 18 ("1–24–95 Op. at ——")). Specifically, this Court held that under New York law and the facts of this case: (1) a drawer, like Bank Polska, has no negligence claim against its drawee bank; and (2) a drawer, like Bank Polska, cannot assert a conversion claim because it lacks a property interest in the allegedly converted check.

Pursuant to an Indemnification/Settlement Agreement entered in November, 1994, Pamrapo agreed to indemnify New York Bank.

## II. *DISCUSSION*

### A. *The Summary Judgment Standard*

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a fact is material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219 n. 3 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).

The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the moving party satisfies this requirement, the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Federal Rule of Civil Procedure 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor, *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, and not just "some metaphysical doubt as to material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

In determining whether any genuine issues of material fact exist, the Court must resolve "all inferences, doubts, and issues of credibility . . . against the moving party." *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dism'd.*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984) (*citing Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972)).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa. 1988). Moreover, a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed. R.Civ.P. 56(e).

In deciding a summary judgment motion, however, the Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. If the party opposing summary judgment has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the Court cannot credit the movant's version of events, even if the quantity of the movant's evidence

far outweighs that of its opponent. *Big Apple BMW v. BMW of North America,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

When a case turns on credibility determinations, summary judgment is inappropriate. *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3d Cir.1993). Furthermore, "[i]ssues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties." *Id.* (quoting *Riehl v. Travelers Ins. Co.,* 772 F.2d 19, 23 (3d Cir. 1985)).

### B. *Pamrapo's Motion for Summary Judgment Against Bank Polska*

Pamrapo moves for summary judgment dismissing Counts Six, Seven and Eight of Bank Polska's Amended Complaint, which allege, respectively, conversion under the U.C.C., breach of warranty under the U.C.C., and common law negligence. For the reasons set forth below, Pamrapo's motion is **granted** and Counts Six, Seven and Eight of Bank Polska's Amended Complaint, insofar as they pertain to Pamrapo, are **dismissed with prejudice.**

#### 1. *Choice of Law*

■ A federal court sitting in diversity applies the choice of law rules of the forum state. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Shields v. Consolidated Rail Corp.,* 810 F.2d 397 (3d Cir.1987).

N.J.S.A. § 12A:4–102(2) [2] provides, in part: The liability of a bank for action or nonaction with respect to any item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank is located.

Pamrapo is a New Jersey bank with its principal place of business in Bayonne, New Jersey. (Amended Compl. at ¶ 5). Accord-ingly, New Jersey law governs Bank Polska's claims against Pamrapo.

#### 2. *Bank Polska's Claim that Pamrapo Converted the Check*

In its January 24, 1995 Opinion and Order, this Court held under New York law, but relying in part on the New Jersey case, *Life Insurance Co. of Virginia v. Snyder,* 141 N.J.Super. 539, 545, 358 A.2d 859 (Law Div. 1976), that Bank Polska could not maintain a conversion action against its drawee bank, Chemical, because Bank Polska lacked a property or ownership interest in the allegedly converted check. *See* 1–24–95 Op. at 16–17.

Bank Polska argues that the law of the case doctrine does not apply, because New Jersey, not New York, law applies to Bank Polska's claims against Pamrapo.

Because the Court concludes that New Jersey law precludes a conversion action by the drawer against the depositary bank in these circumstances, it need not reach whether the law of the case doctrine also bars the claim.

The Court applies the same reasoning it did in its January 24, 1995 Opinion to determine that Bank Polska lacks standing to assert a conversion claim against Pamrapo. *See* 1–24–95 Op. at 15. Although the term owner is not defined in Section 1–201, official comment 2 to Section 3–419 states that "[a] negotiable instrument is the property of the holder." Section 1–201(20) defines a holder as a person in possession of an instrument "drawn, issued, or indorsed to him or to his order or to bearer in blank."

■ Because the $2,000,000.00 check was not "drawn, issued, or indorsed" to Bank Polska, Bank Polska is not its holder or owner, and therefore lacks a proprietary interest sufficient to confer standing to sue for conversion against the depositary bank. *See Stone & Webster Engineering Corp. v. First National Bank & Trust Co. of Greenfield,* 345 Mass. 1, 184 N.E.2d 358 (1962); *Snyder,* 141 N.J.Super. 539, 358 A.2d 859; *Brighton Inc. v. Colonial First Nat'l Bank,* 176

---

**2.** Subsequent references to New Jersey's Uniform Commercial Code will omit "12A." Hence, N.J.S.A. § 12A:4–102(2) will be referred to as "§ 4–102(2)."

N.J.Super. 101, 422 A.2d 433 (App.Div.1980), aff'd, 86 N.J. 259, 430 A.2d 902 (1981); *Sony Corp. of America v. American Express Co.,* 115 Misc.2d 1060, 455 N.Y.S.2d 227, 230 (Civ. Ct.1982); *Central Cadillac, Inc. v. Stern Haskell, Inc.,* 356 F.Supp. 1280, 1283 (S.D.N.Y.1972); *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83, 97 (Mo.Ct.App.1976); *Commercial Credit Corp. v. University National Bank of Fort Collins,* 590 F.2d 849, 852 (10th Cir.1979) ("[a] negotiable instrument is the property of the holder or payee, not the drawer").

Bank Polska cites *Martin Glennon, Inc. v. First Fidelity Bank, N.A.,* 279 N.J.Super. 48, 652 A.2d 199 (App.Div.1995), for its contention that New Jersey law allows a drawer to sue a depositary bank for conversion. In discussing a cause of action under Section 3–419, the court stated that "an instrument is converted when it is paid on a forged endorsement, and a depositary bank warrants to the drawees that all signatures are genuine, N.J.S.A. 12A:3–417(2), also making it liable to the drawer for conversion." *Id.* at 57, 652 A.2d 199.

*Martin Glennon* involved a suit by the payee against the depositary bank, the typical scenario in a conversion action. 1 White & Summers, *Uniform Commercial Code* § 15–5 at 756 (3d ed. 1988). To the extent that *Martin Glennon* advances the proposition that a drawer may sue a depositary bank in conversion, it does so in *dicta,* and therefore is not controlling here.

Bank Polska's reliance upon *Justus Co. v. Gary Wheaton Bank,* 509 F.Supp. 103 (N.D.Ill.1981) is also misplaced, not only for the fact that it applies Illinois law. *Justus* also involved a payee's conversion claim against a depositary bank. Similarly, *Knesz v. Central Jersey Bank and Trust Co. of Freehold,* 97 N.J. 1, 477 A.2d 806 (1984), involved a conversion claim asserted by a payee against a depositary bank. These cases, therefore, fail to establish that a drawer may sue a depositary bank for conversion under New Jersey law.

Bank Polska next argues that it is the "true owner" of the check because it is the only party that has not received consideration for it. Pamrapo argues that Bank Polska has received consideration for the check—a promissory note executed by Smolinski and collateral for the loan it issued Smolinski. (*See* Reply Memorandum of Law of Pamrapo Savings Bank, S.L.A. in Further Support of its Motion for Summary Judgment Against Bank Polska Opieki, S.A. at 5).

Regardless of whether Bank Polska did or did not receive consideration for the check, the cases Bank Polska cites do not support the proposition that under New Jersey law, a drawer who has not received valuable consideration for a check may maintain a conversion claim against a depositary bank. *Tubin v. Rabin,* 382 F.Supp. 193 (N.D.Tex.1974), *supp. opinion,* 389 F.Supp. 787 (N.D.Tex. 1974), *aff'd,* 533 F.2d 255 (5th Cir.1976), applied Texas law and involved a conversion claim by a lawyer's client against a depositary bank. The court held that the client could maintain the suit even though the lawyer was the named payee, because the client was the actual owner of the check. *Tubin* does not stand for the proposition that a drawer may sue a depositary bank in conversion when it draws a $2,000,000.00 check without receiving valuable consideration.

*Casarez v. Garcia,* 99 N.M. 508, 660 P.2d 598 (Ct.App.), *cert. denied,* 99 N.M. 578, 661 P.2d 478 (1983), applied New Mexico law and held that an indorsee of the payee could maintain a conversion claim against the drawee. Its holding does little to advance Bank Polska's argument that a drawer can maintain a conversion claim against a depositary bank.

Finally, *National Credit Union Admin. v. Mich. Nat. Bank,* 771 F.2d 154 (7th Cir. 1985), applied Michigan law and held that when both the drawer's signature and the indorsement are forged, the check should be treated as if it bore only a forged drawer's signature, thus allocating the loss to the drawee bank. *Id.* at 157. *National Credit Union,* therefore, does not advance Bank Polska's position that a conversion claim lies against Pamrapo in this case.

Policy reasons also militate against recognizing a conversion cause of action under these circumstances. Allowing a drawer to sue the depositary bank for conversion, par-

ticularly when, as here, the drawer is accused of negligence, would violate the intention of the drafters of the U.C.C. to require the drawer to seek recourse from his own drawee bank. *Stone & Webster,* 184 N.E.2d at 363 (assertion of drawee bank's U.C.C. defenses of, *e.g.,* contributory negligence on drawer's part would be difficult if the drawer is allowed to assert a conversion claim directly against depositary bank); 1 White and Summers, *Uniform Commercial Code* § 15–5 at 755 ("*If* the drawer is guilty of negligence in many such cases, it makes sense to require that he go against his own bank, the drawee, and not against a depositary bank.").

Furthermore, recent amendments to New Jersey's Uniform Commercial Code clarify that a drawer such as Bank Polska has no standing to sue under Section 3–419. On February 15, 1995, the New Jersey legislature amended the Uniform Commercial Code. Though the Court does not apply the amendments retroactively, *Jordan v. Dennison,* 278 N.J.Super. 306, 310, 650 A.2d 1041 (App.Div.) (statutes, as general rule, should be applied prospectively), *certif. denied,* 140 N.J. 278, 658 A.2d 301 (1995), it nevertheless finds the recent amendments helpful in discerning the scope of pre-amendment Section 3–419. *See State v. One 1976 Pontiac Firebird,* 168 N.J.Super. 168, 176, 402 A.2d 254 (App.Div.1979) (recent statutory enactments are "an intrinsic aid in the search for legislative intent"). The recent amendments are particularly illuminating because they were intended to explain and clarify the Code's statutory scheme rather than change the meaning of the original code. *See* 1995 Version of Section 3–420, Official Comment 1.

Section (a) of amended Section 3–420, which replaces Section 3–419 as the code provision governing conversion claims, provides that "[a]n action for conversion of an instrument may not be brought by ... the issuer or acceptor of the instrument." The Official Comment to amended Section 3–420, further, expressly adopts the holding in *Stone & Webster. See* Official Comment 1 to Section 3–420 ("There is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer.

The drawer has an adequate remedy against the payor bank for recredit of the drawer's account for unauthorized payment of the check.").

Bank Polska urges this Court, sitting in diversity, to do what the New Jersey legislature refused to do—create a conversion cause of action for the drawer against the depositary bank. This the Court must decline.

Bank Polska further argues that fact issues regarding ownership preclude summary judgment on the conversion claim. *See Justus,* 509 F.Supp. at 106 ("Any attempt to determine who had the stronger interest in the check at the time of the forgery and is thus entitled to the cause of action raises issues of fact.") (applying Illinois law). *Justus* involved a payee who had not received actual physical possession of the check in question, and is therefore distinguishable from this case, where the drawer seeks to assert a conversion claim against the depositary bank. The Court declines to read *Justus* as creating a fact issue of ownership under the circumstances of this case.

Bank Polska also claims that fact issues regarding whether Pamrapo acted in accordance with reasonable commercial standards precludes summary judgment. *See Phariss v. Eddy,* 478 N.W.2d 848, 851 (Ct.App.Iowa 1991) ("What is or is not commercially reasonable [under 3–419(3) ] is a question of fact"). Section 3–419(3) provides that a depositary or collecting bank, which has acted in accordance with reasonable commercial standards, is not liable in conversion to the true owner beyond the amount of any proceeds remaining in the bank's hands. Because the Court has determined that Bank Polska is not the true owner of the $2,000,-000.00 check, Section 3–419(3) is not applicable. Therefore, factual issues regarding the reasonableness of Pamrapo's conduct, assuming they exist, do not preclude summary judgment here.

■ Bank Polska next argues that it is entitled to maintain a conversion claim against Pamrapo because Braxton Industries, Inc., the intended payee, assigned any and all claims it has relating to the check to Bank Polska. Braxton Industries, Inc.'s

President, Charles Yoas, however, has testified that his company has no interest in the check and no claims against any party. (Certification of Charles Yoas, dated March 22, 1995, at 18). Because there was nothing to assign, the purported assignment fails to confer a right to sue.

*Lincoln Nat. Bank & Trust Co. v. Bank of Commerce,* 764 F.2d 392 (5th Cir.1985), dealt with a similar issue. In *Lincoln,* an insurance agent prepared and forwarded to his employer insurer a series of fraudulent applications for loans against the cash value of its insureds' policies. *Lincoln,* 764 F.2d at 394. The insurer accepted the applications and sent checks to the insureds representing the proceeds of the loan. *Id.* at 394. The agent then forged the endorsements and deposited the checks into his own account. *Lincoln,* 764 F.2d at 393–94. The insurer paid off the cash value of the loans, became subrogated to the rights of the intended payee and asserted a conversion claim against the depositary bank. *Id.*

The Fifth Circuit held that the insurance company as subrogee could not maintain a conversion claim against the depositary bank when the intended payee never came into actual or constructive possession of the check. *Id.* at 398. The rule announced by the Fifth Circuit in *Lincoln* "prevent[s] attempts by negligent drawers, such as the insurance compan[y] here, to sidestep the issue of their negligence by subrogating to the rights of innocent payees or by persuading the payees to seek recovery directly from the banks who handled the checks." *Id.; see also* 1 White & Summers, *Uniform Commercial Code* § 15–5 at 756 ("By dressing in the clothing of the payee, the insurance company [in *Lincoln* ] presumably hoped to escape the 3–405 defense that it, like the payor bank, would face suing upstream on a warranty.") (citing the holding in *Lincoln* as properly denying the drawer a cause of action in conversion).

Like the insurance company in *Lincoln,* Bank Polska may not pose as the payee so it can assert a conversion claim against Pamrapo. The Court, accordingly, **grants** summary judgment dismissing Count Six of Bank Polska's Amended Complaint insofar as it pertains to Pamrapo.

3. *Bank Polska's Claim that Pamrapo Breached its Presentment Warranty*

■ Bank Polska's claim, asserted in Count Seven of its Amended Complaint, that Pamrapo breached the Section 3–417(1) presentment warranty fails, because the Section 3–417(1) warranty does not run to a drawer like Bank Polska.

Under New Jersey law, the Code warranties contained in Sections 3–417 and 4–207 do not run to the drawer. Section 3–417(1), upon which Bank Polska relies, provides:

> Any person who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that ... (a) he has good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title.

Section 4–207(1) contains a similar warranty:

> Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that ... (a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title.

Regardless of the warranty provision upon which Bank Polska relies, it may not assert a warranty claim against Pamrapo. *See Life Ins. Co. of Virginia v. Snyder,* 141 N.J.Super. 539, 542–44, 358 A.2d 859 (Law Div. 1976) (4–207 warranty does not run to drawer because it is not a payor, transferee or collecting bank); *Central Cadillac, Inc. v. Stern Haskell, Inc.,* 356 F.Supp. 1280 (S.D.N.Y.1972) (same) (applying New York law); *Steinroe Income Trust v. Continental Bank,* 238 Ill.App.3d 660, 179 Ill.Dec. 671, 673, 606 N.E.2d 503, 505 (1992) (no warranty under either 3–417(1) or 4–207(1) is created in favor of drawer) (applying Illinois law).

Bank Polska cites to *Sun 'n Sand, Inc. v. United California Bank,* 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978), which held that a drawer bank could assert claims

under 3-417(1) or 4-207(1) against a depositary bank. *See also Insurance Co. of North America v. Purdue National Bank of Lafayette,* 401 N.E.2d 708 (Ind.Ct.App.1980) (holding that drawer of check whose account is charged is a "payor" and therefore can raise warranty claims against depositary bank) (applying Indiana law); *Insurance Co. of North America v. Atlas Supply Co.,* 121 Ga. App. 1, 172 S.E.2d 632 (1970) (same) (applying Georgia law).

The *Sun 'n Sand* line of cases has been rejected by the New Jersey legislature in its recent amendments to New Jersey's Uniform Commercial Code. *See* Official Comment 2 to Section 3-417 ("In *Sun 'N Sand [Sun 'n Sand], Inc. v. United California Bank,* the court held that under former section 3-417(1) a warranty was made to the drawer of a check when the check was presented to the drawee for payment. The result in that case is rejected."). Though amended Section 3-417(1) does not apply retroactively to this action, the Court finds the official commentary persuasive support for the proposition that the Section 3-417(1) warranty does not run to drawers. *See also* 1 White & Summers, *Uniform Commercial Code* § 15-9 at 776-77 ("[W]e think it unfortunate that some courts have extended the 4-207(1) warranty to the drawer.").

Bank Polska also urges the Court to draw a distinction between the 3-417(1) warranty, which runs to payors outside of banking channels, and the 4-207 warranty, which does not. (Plaintiff's Brief in Opposition to Defendant Pamrapo Savings Bank, S.L.A.'s Motion for Summary Judgment at 39 n. 26). The warranty provisions, however, are "almost identical." 1 White & Summers, *Uniform Commercial Code* § 15-9 at 774. Further, the same reasoning that supports the position that a drawer bank is not a beneficiary of the 4-207(1) warranty—*i.e.,* that a drawer is not a payor or transferee—applies with equal force to the 3-417(1) warranty. Finally, the same policy reasons that serve to deny a 4-207(1) warranty claim in favor of the drawer, also counsel in favor of denying a 3-417(1) warranty claim. *See* 1 White & Summers, *Uniform Commercial Code* § 15-9 at 776 ("To hold that the warranties in 4-207 flow either directly or under a third-party beneficiary theory to the drawer, is to shift the burden of presenting [negligence] defenses to the depositary or other collecting banks.").

Accordingly, the Court **dismisses** Count Seven of Bank Polska's Amended Complaint insofar as it pertains to Pamrapo.

### 4. Bank Polska's Claim that Pamrapo is Liable for Negligence

The Court also **dismisses** Count Eight of Bank Polska's Amended Complaint insofar as it pertains to Pamrapo, because allowing an independent common law negligence action would upset the loss allocation scheme contemplated by the legislature in enacting the Uniform Commercial Code.

■ The Uniform Commercial Code provides a comprehensive framework for allocating losses when a forged check enters the negotiation process. Only in very rare instances should a court upset the legislative scheme of loss allocation and permit a common law cause of action. *See Girard Bank v. Mount Holly State Bank,* 474 F.Supp. 1225, 1239 (D.N.J.1979) ("Courts should be hesitant to improvise new remedies outside the already intricate scheme of Articles 3 and 4"); 1 White & Summers, *Uniform Commercial Code* § 16-1 at 783 ("[S]ome courts have been more innovative than we believe they should have been in granting plaintiffs affirmative causes of action in negligence. To grant such affirmative claims based on negligence willy-nilly is to throw sand in the gears of a carefully designed machine.").

■ Pamrapo cannot be liable to Bank Polska in negligence because, as a depositary bank, it had no direct dealings with Bank Polska and therefore owed it no duty. *Western Union Tel. Co. v. Peoples Nat. Bank in Lakewood,* 169 N.J.Super. 272, 278, 404 A.2d 1178 (App.Div.1979); *Stone & Webster Engineering Corp. v. First Nat. Bank & Trust of Greenfield,* 345 Mass. 1, 184 N.E.2d 358, 364 (1962). Further, even if Pamrapo were negligent in collecting the check, "such negligence cannot be regarded as the [legal] cause of the customer's loss." *Brighton, Inc. v. Colonial First National Bank,* 176 N.J.Super. 101, 116, 422 A.2d 433 (App.Div.1980) (citing *Stone & Webster* ). Rather, it is the

actions of the drawee bank that proximately cause the drawer's loss. *Id.; see also Stone & Webster,* 184 N.E.2d at 364 ("The harm which befell the [drawer] was the charging of its account by the drawee bank. As has been noted above, the drawer has a cause of action, possibly subject to defences, against that bank.").

Bank Polska mistakenly relies on *Girard Bank v. Mount Holly State Bank,* 474 F.Supp. 1225 (D.N.J.1979), for a contrary result. *Girard Bank* allowed the depository bank to assert a supplemental common law negligence claim against the drawer. *Girard Bank,* therefore, dealt with the mirror image of this case, where the drawer seeks to assert a common law negligence claim against the depositary bank. After cautioning against improvising new remedies outside the intricate scheme of loss allocation in the Uniform Commercial Code, the court in *Girard Bank* held that the depositary bank could assert a common law negligence claim against the drawer of the check. The court pointed to the Code policy favoring deterrence of the actor best able to prevent the fraud, the negligent drawer. *Girard Bank,* 474 F.Supp. at 1239.

The *Girard Bank* court expressly distinguished the situation where a drawer attempts to assert a negligence claim against a depositary bank. *Girard Bank,* 474 F.Supp. at 1239–40. Specifically, the court noted that allowing a drawer to sue the depository bank in negligence would circumvent the assertion of contributory negligence defenses by the drawee bank. *Id.* (citing *Stone & Webster, Western Union Telegraph Corp. v. Peoples National Bank in Lakewood,* 169 N.J.Super. 272, 277–80, 404 A.2d 1178 (App.Div.1979); *Snyder,* 141 N.J.Super. at 544, 358 A.2d 859).

Allowing a negligence claim in the circumstances of this case would circumvent the drawee's Section 3–406 and 4–406 defenses. Further, unlike in *Girard Bank,* the Code policy favoring deterrence of the party best able to prevent the fraud would not be furthered by allowing an allegedly negligent drawer to circumvent the drawee bank's contributory negligence defenses.

Bank Polska also cites to *New Jersey Steel Corp. v. Warburton,* 139 N.J. 536, 655 A.2d 1382 (1995), in support of the viability of its common law negligence claim. That case, however, dealt with a drawer's negligence claim against a party that was both the depositary and the drawee bank. The court therefore never addressed whether the drawer had a direct action against a depositary bank.

Finally, Bank Polska argues that denying it a direct action against Pamrapo could result in Pamrapo never being held liable for its negligence, contrary to the policy of the Code to place liability on negligent banks as opposed to negligent drawers. The Court does not agree with Bank Polska's interpretation of Code policy. *See Girard Bank,* 474 F.Supp. at 1239 (Code policy is to place liability on party best able to prevent the fraud, which, in the case before the court, was the negligent drawer); *see also Brighton,* 176 N.J.Super. at 119, 422 A.2d 433 ("the Code's clear design [is] to place the loss, in fictitious payee cases, on [drawers]").

"The Article 3 and 4 scheme is not comprehensive, but it is nearly so. When one thinks he has found a large hole in the scheme, he is likely to be mistaken." 1 White & Summers, *Uniform Commercial Code* § 16–6 at 806. The Court sees whole cloth where Bank Polska sees hole. Far from advancing Code policies, allowing a direct common law action against the depositary bank would thwart them by circumventing the drawee's Code defenses. Accordingly, the Court **dismisses** Count Eight of Bank Polska's Amended Complaint, **with prejudice.**

C. *Third–Party Defendant Meliado's Motion for Summary Judgment Against Pamrapo*

The Court denies Meliado's motion for summary judgment because genuine issues of material fact exist as to whether Meliado made false representations to Pamrapo.

Pamrapo asserts two claims against Meliado, one for negligent misrepresentation, and another for fraud. Both claims survive summary judgment.

Under New Jersey law, pecuniary liability for negligent misrepresentation is

properly imposed whenever an attorney "supplies false information for the guidance of others in their business transactions, . . . if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Petrillo v. Bachenberg*, 139 N.J. 472, 478–80, 655 A.2d 1354 (1995). Thus, lawyers are liable for the "foreseeable consequences of their negligent misrepresentation on which the [non-client] reasonably or foreseeably relied." *Id.* at 480, 655 A.2d 1354.

■ Pamrapo has presented evidence that genuine issues of fact exist as to the statements Meliado made when he accompanied Smolinski to Pamrapo. Meliado denies making any representations to Pamrapo. (*See* Meliado Cert. at ¶ 20). Pamrapo, however, offers the deposition testimony of Pamrapo's vice president, Walter Delikat, that Meliado represented, among other things, that the $2,000,000.00 check was good and that Smolinski was the son of a wealthy industrialist. (Delikat Dep. at 41–42). This version of events, if credited by a jury, could support a verdict against Meliado. *See Security National Bank v. Lish*, 311 A.2d 833 (D.C.Ct. App.1973) (attorney liable for negligently representing financial status of his client to bank that supplied the client with a loan).

■ Pamrapo has also presented sufficient material evidence to withstand summary judgment with respect to its fraud claim against Meliado. To prove fraud under New Jersey law, a party must show that the defendant: (1) materially misrepresented a presently existing or past fact; (2) knowing the representation to be false and intending the other party to rely on it; (3) with the result that the other party actually did rely on it to his detriment. *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir.1993).

■ As set forth above, Pamrapo has presented evidence that a genuine issue of material fact exists as to whether Meliado made false representations regarding Smolinski's financial means and the genuineness of the check. Whether Meliado did so with *scienter,* as required for fraud liability, is a question of fact that is particularly ill-suited for summary disposition. *Coolspring Stone*

*Supply, Inc. v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir.1993).

In support of his motion for summary judgment, Meliado advances the fallacious proposition, based on an analogy to concepts of duty in criminal law, that he owed no duty to Pamrapo, because Pamrapo is not his client. The Supreme Court of New Jersey, however, explicitly rejected this argument. *Petrillo v. Bachenberg*, 139 N.J. 472, 478–80, 655 A.2d 1354 (1995).

Pamrapo has met its burden of presenting competent evidence regarding genuine issues of material facts. Further, granting summary judgment at this stage of the proceedings, with the depositions of several key witnesses yet to be taken, would be unfair to Pamrapo. *See* Fed.R.Civ.P. 56(f). Accordingly, the Court **denies** Meliado's motion for summary judgment **without prejudice.**

For the same reasons, the Court **denies without prejudice** Meliado's motion for summary judgment seeking dismissal of Chase's Fourth–Party claims.

### D. Fourth–Party Plaintiff Chase's Motion for Summary Judgment Against Bank Polska

The Court **grants** Fourth–Party Plaintiff Chase' motion for summary judgment insofar as it seeks an Order that New York Bank, and hence Pamrapo as New York Bank's indemnitor, must indemnify Chase in the event that Chase is liable to Chemical on Chemical's warranty claims. The Court, however, **denies** Chase's motion insofar as it seeks attorneys' fees and costs incurred during this action.

As an initial matter, pursuant to New Jersey's choice of law principles as explicated above, the Court applies New York law to the claims against New York Bank, because New York Bank is a New York bank. (*See* Fourth–Party Compl. at ¶ 2).

■ Chase is entitled to indemnification from Pamrapo. The only claim asserted against Chase is Chemical's claim that Chase breached the Uniform Commercial Code presentment/transfer warranties. N.Y.U.C.C. §§ 4–207 and 3–419. Pamrapo, further, does not dispute that New York

Bank, its indemnitee, made the very same warranties to Chase. Pamrapo, therefore, is under an obligation to indemnify Chase in the event that Chase is liable to Chemical on Chemical's breach of warranty claims.

In fact, Pamrapo acknowledges its obligation to indemnify Chase for breach of warranty. (Brief on Behalf of Pamrapo Savings Bank, S.L.A. and Federal Home Loan Bank of New York in Opposition to Chase Manhattan's Motion for Summary Judgment at 1). The Court therefore **grants** Chase's motion for summary judgment to the extent that it seeks indemnification from Pamrapo for Chemical's breach of warranty claims.

 The Court, however, **denies** Chase's motion insofar as it seeks to be indemnified for attorneys' fees and costs incurred in this action. N.Y.U.C.C. § 4–207 provides that damages for breach of warranty may include "expenses related to the item, if any." Official Comment 5 to Section 4–207 states that "'expenses' referred to in [U.C.C. § 4–207(3)] may be ordinary collecting expenses and, in appropriate cases, could also include such expenses as attorneys fees."

Neither the highest court in New York, nor the intermediate New York appellate courts, have addressed whether the term, "expenses," includes attorneys' fees. In the absence of authoritative pronouncement, the Court must predict how the Court of Appeals would rule. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981).

The Third Circuit faced a similar task construing the identical provision in New Jersey's Uniform Commercial Code and concluded, based on New Jersey's "unhappy history with the practice of awarding attorneys' fees," and New Jersey's strict adherence to the American Rule regarding attorneys' fees, that Section 4–207(3) did not provide for attorneys' fees. *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775–76 (3d Cir.1990) (holding that party who was drawn into a litigation not of its own making, where liability appeared clear, and in which the party made every attempt to minimize its litigation expenses was not entitled to attorneys' fees under Section 4–207(3) despite the "harsh result").

New York also follows the American Rule. *Mighty Midgets v. Centennial Ins. Co.*, 47 N.Y.2d 12, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979); *Hooper Associates v. AGS Computers*, 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). In the absence of a more specific legislative command authorizing the recovery of attorneys' fees, the Court does not believe the New York Court of Appeals would authorize recovery of attorneys' fees under N.Y.U.C.C. § 4–207(3).

For the same reasons, the Court does not read the term "expenses" to cover the costs of suit.

Further, even if the Court of Appeals did recognize the recovery of attorneys' fees and costs under N.Y.U.C.C. § 4–207(3), the Court predicts that it would do so only in appropriate cases. After analyzing the lower court opinions from New York that have authorized the recovery of attorneys' fees under N.Y.U.C.C. § 4–207(3), the Court concludes that this is not an "appropriate case" to award attorneys' fees and costs.

The cases cited by Chase in support of its motion for attorneys' fees involve egregious conduct suggestive of bad faith. In the three cases cited by Chase, *Provident National Bank v. National Bank of North America*, 17 U.C.C.R.Serv. 486, 487 (N.Y.Civ.Ct.1975), *Long Island Trust Co. v. National Bank of North America*, 28 U.C.C.R.Serv. 1442, 1446 (N.Y.Sup.Ct.1980) and *Lund v. Chemical Bank*, 675 F.Supp. 815, 818 (S.D.N.Y.1987), *rev'd on other grounds*, 870 F.2d 840 (2d Cir.1989), the bank that was sued for breach of warranty did not oppose summary judgment and raised no substantial defenses. This case differs considerably in that several defenses, such as contributory negligence on the part of the drawer, are being pursued which, if successful, would negate New York Bank's liability to Chase. Therefore, even if the New York Court of Appeals were to recognize a limited right to recover attorneys' fees for actions under N.Y.U.C.C. § 4–207, this would not be an "appropriate case" for such an award.

Chase further argues that it is entitled to attorneys' fees expended in this litigation

pursuant to an indemnification clause in the Deposit Account Agreement between New York Bank and Chase. Chase's Fourth–Party Complaint makes no mention of the Deposit Account Agreement, however. The Fourth–Party Complaint seeks indemnity based upon Pamrapo and New York Bank's primary breach of the Code warranties, not based on the contract between Chase and New York Bank. (Fourth–Party Complaint at ¶¶ 17–18). Chase's contract claim, therefore, is not properly before the Court on this motion for summary judgment. Chase may, of course, move the Court to amend its Fourth–Party Complaint to assert a claim based on contract.

Accordingly, Chase's motion for summary judgment is **granted in part and denied in part without prejudice.**

## III. *CONCLUSION*

For the foregoing reasons, the Court: (1) **grants** Pamrapo's motion for summary judgment and **dismisses** Counts Six, Seven and Eight of Bank Polska's Amended Complaint insofar as they pertain to Pamrapo; (2) **denies** Meliado's motion for summary judgment, **without prejudice;** (3) **grants** Chase's motion for summary judgment insofar as Pamrapo is Ordered to indemnify Chase for the breach of warranty claims Chemical asserts against Chase **and denies without prejudice** Chase's motion for summary judgment insofar as Chase seeks to be indemnified for attorneys' fees and costs.

An appropriate Order accompanies this Opinion.

## *ORDER*

This matter having come before the Court on the motions of: (1) Defendant and Third–Party Plaintiff, Pamrapo Savings Bank, S.L.A. ("Pamrapo"), for summary judgment dismissing Counts Six (conversion under the Uniform Commercial Code ("U.C.C.")), Seven (breach of U.C.C. transfer warranties) and Eight (common law negligence) asserted by Bank Polska Opieki, S.A. ("Bank Polska") in its Amended Complaint; (2) Fourth–Party Plaintiff, The Chase Manhattan Bank, N.A. ("Chase Manhattan"), for summary judgment granting indemnification and attorneys' fees

under U.C.C. § 4–207 (U.C.C. warranty); (3) Third- and Fourth–Party Defendant, Donald Meliado ("Meliado"), for summary judgment dismissing the claims for indemnification and contribution asserted against him by Pamrapo and Chase Manhattan; and

The Court having considered the submissions of counsel as well as oral argument on behalf of the parties; and

For good cause shown;

It is on this 11th day of December, 1995 ORDERED that:

(1) Pamrapo's motion for summary judgment dismissing Counts Six, Seven and Eight of Bank Polska's Amended Complaint insofar as they pertain to Pamrapo is **granted;**

(2) Meliado's motion for summary judgment is **denied without prejudice;**

(3) Chase's motion for summary judgment is **granted in part** insofar as Pamrapo is **Ordered** to indemnify Chase for the breach of warranty claims Chemical asserts against Chase **and denied in part without prejudice** insofar as Chase seeks to be indemnified for attorneys' fees and costs.